ACCEPTED
13-15-00487-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
12/17/2015 3:48:57 PM
Dorian E. Ramirez
CLERK

## CAUSE NO. 13-15-00487-CV

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
12/17/2015 3:48:57 PM
DORIAN E. RAMIREZ
Clerk

IN THE THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI-EDINBURG, TEXAS

# IN THE ESTATE OF LEE ROY HOSKINS, SR.

*On appeal from the Live Oak County Court, Live Oak County, Texas*
*Trial Court No. 1785, Hon. Joe H. Loving, Presiding*

## BRIEF OF APPELLEES LEE ROY HOSKINS, III, LEE ROY HOSKINS, JR., LEE ANN HOSKINS KULKA, ANDREA CLARE JURICA, LEONARD HOSKINS, DANIEL KENTON HOSKINS AND WILLIAM REX HOSKINS

Royal B. Lea, III
State Bar No. 12069680
royal@binghamandlea.com
Bingham & Lea, P.C.
319 Maverick Street
San Antonio, TX 78212
(210) 224-1819

COUNSEL FOR
APPELLEES LEE ROY
HOSKINS, III, LEE ANN
HOSKINS KULKA, and
ANDREA CLARE JURICA

David Ylitalo
State Bar No.22155500
d.ylitalo@ylitalolaw.com
Ylitalo Law Firm
319 Maverick Street
San Antonio, TX 78212
(210) 846-8595

COUNSEL FOR
APPELLEES
LEONARD HOSKINS,
WILLIAM REX HOSKINS
and DANIEL KENTON
HOSKINS

Audrey Mullert Vicknair
State Bar No. 14650500
avicknair@vicknairlaw.com
Law Office of Audrey Mullert
Vicknair
802 N. Carancahua, #2100
Corpus Christi, TX 78401
(361) 884-5400
COUNSEL FOR ALL THESE
APPELLEES

*APPELLEES CONDITIONALLY REQUEST ORAL ARGUMENT*

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................. iv

REFERENCES TO THE RECORD ...................................................... viv

STATEMENT REGARDING LACK OF APPELLATE COURT
JURISDICTION.................................................................................. vii

STATEMENT REGARDING ORAL ARGUMENT ............................ vii

ISSUES PRESENTED, RESTATED ................................................. viii

STATEMENT OF FACTS ....................................................................1

    1.    Background Facts .................................................................1

    2.    A Receiver For Cowboy's Estate Was Appointed Long Ago................4

    3.    Recent Probate Court Proceedings ........................................7

    4.    The Probate Court Confirms the Previously-Appointed Receiver.........8

SUMMARY OF THE ARGUMENT ...................................................10

ARGUMENT ......................................................................................11

    I.    The Probate Court's Order Simply Confirms a Prior Order Appointing
        Receiver; the Appeal Should Be Dismissed..........................11

    II.    The Law Regarding Receivers ...........................................13

    III.    The Order Is Not Harsh Or Drastic .....................................16

    IV.    No Additional Evidence Was Necessary to Confirm the
        Prior Order ......................................................................19

        A. Cliff has Waived Opposition.........................................19

        B. Cliff has No Standing to Object to the Appointment of a Receiver
           for the Trusts..............................................................21

C.  The Probate Court Record and Procedural History Support The Confirmation Order ..................................................................................22

D.  Additional Bases for Affirmance ....................................................26

V.  Cliff's Complaints About Compensation To The Receiver Are Moot And Waived ..................................................................................28

CONCLUSION AND PRAYER ........................................................................30

CERTIFICATE OF COMPLIANCE..................................................................32

CERTIFICATE OF SERVICE ..........................................................................32

APPENDIX ......................................................................................................33

A   Arbitrator's Order Appointing Receiver, dated April 16, 2013 (CR 15-16)

B   Judge Loving's Order Appointing Receiver, dated October 1, 2015 (CR 477)

C   Receiver's Report to Arbitrator, dated July 28, 2013 (Supp. CR 13-42)

D   Probate Court's Order on Receiver's First Amended Petition, dated August 1, 2014 (Supp. CR 128)

# INDEX OF AUTHORITIES

## Cases

*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex. 1985) ...................14

*Elliott v. Weatherman*, 396 S.W.3d 224
(Tex. App.—Austin, 2013, no pet.)......................................................................16

*Gonzalez v. Gonzalez*, 469 S.W.2d 624
(Tex. Civ. App.—Corpus Christi 1971, writ ref'd n.r.e.).................. 15, 16, 22, 23

*Grinnell v. Munson*, 137 S.W.3d 706
(Tex. App.—San Antonio 2004, no pet.) ............................................................22

*Hoskins v. Hoskins*, 2014 Tex. App. LEXIS 11382
(Tex. App.—San Antonio, Oct. 15, 2014, pet. granted) .......................................4

*In re Estate of Trevino*, 195 S.W.3d 223
(Tex. App.—San Antonio 2006, no pet.) ......................................... 14, 15, 16, 27

*Interfirst Bank-Houston, N.A. v. Quintana Petroleum Corp.*, 699 S.W.2d 864
(Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) .....................................22

*Krumnow v. Krumnow*, 174 S.W.3d 820
(Tex. App.—Waco 2005, pet. denied) ................................................................16

*Marlow v. Palm Harbor Homes*, 2002 Tex. App. LEXIS 6371
(Tex. App.—Houston [14th Dist.] Aug. 29, 2002, no pet.) .................................21

*Pfeiffer v. Pfeiffer*, 394 S.W.3d 679
(Tex.Civ.App.—Houston [1st Dist.] 1965, writ dism'd) ....................................14

*Rusk v. Runge*, 2003 Tex.App. LEXIS 9615
(Tex.App.—Houston [14th Dist.] Nov. 13, 2003, pet. denied)............................28

*Sorrel v. Sorrel*, 1 S.W.3d 867
(Tex. App.—Corpus Christi 1999, no pet.)........................................................22

*Tugman v. Tugman*, 2008 Tex. App. LEXIS 3914
(Tex.App.—Corpus Christi-Edinburg 2008, no pet.)............................. 13, 14, 23

## Statutes and Rules

TEX. CIV. PRAC. & REM. CODE § 51.014 ...............................................................10

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1) ........................................ vii, 12, 13

TEX. CIV. PRAC. & REM. CODE § 64.001(a)(3) ................................................ 14, 26

TEX. CIV. PRAC. & REM. CODE § 64.001(a)(6) .......................................................14

TEX. PROP. CODE § 112.052 .......................................................................................22

TEX. PROP. CODE § 114.008 .......................................................................................14

TEX. PROP. CODE § 114.008(a)(5)........................................................................ 23, 26

TEX. R. APP. P. 26.1(b)................................................................................................13

TEX. R. APP. P. 33.1 ....................................................................................................26

## REFERENCES TO THE RECORD

### Clerk's Record

Appellees refer to material in the Clerk's Record as "CR __."

Appellees submit four items from the Clerk's Record as Appendices to this Brief. Appendix A is the Arbitrator's Order Appointing Receiver dated April 16, 2013 (CR 15-16). Appendix B is the Probate Court's Order appointing Receiver dated October 1, 2015 (CR 477). Appendix C is the initial Report the Receiver prepared for the Arbitrator dated July 28, 2013 (Supp. CR 13). Appendix D is the Probate Court's Order on Receiver's First Amended Petition, dated August 1, 2014 (CR 310-311).

### Reporter's Record

Appellees refer to material in the Reporter's Record as "RR [date], at p. __." There are three Reporters Records, one from a hearing on May 6, 2014, one from a hearing on July 3, 2014, and one from July 15, 2015, on the Motion for Order Appointing Marcus Rogers as Receiver.

Excerpts from the July 3, 2014, Reporter's Record were attached to Appellants' Bench Brief submitted in opposition to the Motion for Order Appointing Marcus Rogers as Receiver after the July 15, 2015, hearing. CR 451, 452, nn. 18 & 20. The Reporter's Record from July 3, 2014, is thus part of the record of

proceedings and was properly considered by the Probate Court in entering the Order on which this appeal is based.

## STATEMENT REGARDING LACK
## OF APPELLATE COURT JURISDICTION

Appellees contend the Probate Court's "Order Appointing Receiver" is actually an interlocutory order that <u>confirms</u> an Arbitrator's prior order that appointed that very Receiver; this is not a traditional trial court "order that appoints a receiver" in the first instance. TEX. CIV. PRAC. & REM. CODE §51.014(a)(1) ("A person may appeal from an interlocutory order . . . that appoints a receiver . . . ."). In addition, prior orders that had likewise confirmed the Receiver were not appealed, so if this order is appealable, those orders were likewise appealable and this appeal is too late. Appellees move for dismissal of this appeal as stated in more detail in part I. of the Argument below.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe that the issues in this case are not complex and that the Court can decide this case without the need for oral argument. Appellants have requested oral argument, however, and if the Court holds oral argument, Appellees will be pleased to address the Court.

## ISSUES PRESENTED, RESTATED

1.      This Court has no jurisdiction over this Appeal because the order being appealed is not an appealable interlocutory order; if it is, then prior similar orders confirming the Receiver were not appealed so this appeal is too late.

2.      The Probate Court properly confirmed the prior appointment of the Receiver made by an arbitrator.

3.      The Probate Court did not need to hold an evidentiary hearing to honor the prior order appointing the Receiver.

4.      The Probate Court did not abuse its discretion by ordering a court-supervised professional, subject to the Probate Court's oversight, to prepare a written report on the existence, location, and value of assets that should have gone into the two testamentary trusts and in the Estate of Cowboy Hoskins: there had been no accounting for those assets since Cowboy Hoskins died more than 30 years ago.

## STATEMENT OF FACTS

### 1. Background Facts

When Lee Roy "Cowboy" Hoskins, Sr. died in 1985, he left the bulk of his estate to two testamentary trusts created under his Will for the benefit of his wife Hazel Hoskins, and his descendants: Appellant Colonel Clifton Hoskins and Appellees Leonard and Lee Roy, Jr. (Cliff's brothers and Hazel's sons) and Cowboy's seven grandchildren. App. C at p. 13, 17. The two trusts were a Marital Deduction Trust and a Residuary Trust. *Id.* All of Cowboy's descendants were the beneficiaries of the Residuary Trust. *Id.* The purpose of the Residuary Trust was to distribute the income of same, as appropriate, to the benefit of the living members of the class of persons composed of Cowboy's wife, his children, and his grandchildren. App. C at p. 17. The principal was to have been available for education, health, maintenance and support of that beneficiary class. *Id.*

One of the assets of Cowboy's Estate was the stock of Hoskins, Inc., the other Appellant here. App. C at p. 13.

Hazel and National Bank of Commerce were the two original Trustees of the Trusts according to the Will. *Id.* at 13. National Bank of Commerce resigned as Trustee shortly after Cowboy died. *Id.* Thus, Hazel served as the sole Trustee of both Trusts until she resigned in 2014 and the Probate Court appointed successor Trustees – 30 years after Cowboy's death. *Id.* at 13-14; *see also* CR 217 (Hazel

1

appointed to serve and NBC appointed but resigned), 203-22 (Hazel resigning).

Hazel was obligated under the Will to account annually to the beneficiaries of the Residuary Trust, but never did so. App. C at p. 13-14. Nor did she ever file an income tax return for either Trust. *Id.* Although Hazel was the independent executrix of Cowboy's Probate Estate until she resigned on May 27, 2014,[1] she never filed any accounting for the Trusts in the Probate Court or provided any written accounting to the beneficiaries of the Trusts until the Probate Court ordered her to do so in 2014. *Id.* Then, Hazel filed a deficient accounting for the Marital Deduction Trust (*see* Receiver's Objections at Supp. CR 132-142), but still filed nothing for the Residuary Trust.

Hazel never transferred any assets to either of the Trusts, and never made or kept any records of what should have been the assets of either of the Trusts. App. C at p. 13-14 (never transferred and no records); CR 207 (Residuary Trust never funded); CR 125 (Hazel admitting "the decision was made to not fund" the Trusts). Hazel's counsel has even taken the position with the Receiver that the Trusts didn't even exist. RR July 3, 2014, at p. 74 (no trust assets), p. 150 (were no trusts).

According to the Receiver's preliminary report, for years Hazel used her fiduciary roles as executrix and trustee of the Trusts, and officer and director of Hoskins, Inc. to benefit herself and Cliff over the other beneficiaries. App. C at p.

---

[1] CR 201; App. C at p. 110-11 (Hazel Affidavit).

14, 15; accord, CR 346, 434, Supp. CR 143 [Successor Trustees agree]. "In ignoring the validity of the Trusts, Hazel converted the assets in Cowboy's estate to her own and defeated his estate plan." CR 14. "Today, with few exceptions, assets that should be titled in the name of the Trusts are now titled in the name of Cliff and/or Hazel (individually or in her personal living trust) or still in the estate. Hazel has even claimed the trust is not in existence." CR 14-15.

Hazel said in an affidavit she signed in 2001 that she held one-half of the stock of Hoskins, Inc. as Trustee of the Marital Deduction Trust. App. C, at 36-40. In the same affidavit she admitted numerous transactions for her benefit involving Appellants Cliff and Hoskins, Inc., and the stock of that company. *Id*. She never provided an accounting or demonstration of the fairness or propriety of any of those transactions. The Receiver reported that "At a time when Hazel was an officer in a corporation the stock of which was owned by the Trusts, she entered into business transactions favoring one of the Trust's beneficiaries [Cliff] that effectively made the trusts insolvent." App. C at p. 13.

All court-appointed professionals since then have concluded that no assets ever should have gone into the Marital Deduction Trust; rather, all of the assets of Cowboy's Estate should have gone to the Residuary Trust for the benefit of all of Cowboy's beneficiaries. Supp. CR 134 (Receiver); Supp. CR 145-48 (Successor Trustee of Residuary Trust); 472-73 (Successor Trustee of Marital Deduction Trust);

3

326 (Dependent Administrator).

Hazel commingled Trust assets with her own and used Trust assets as her own even though the Trust prohibited her from making any distributions to herself while she was a Trustee. App. C at p. 13-14. Hazel contended there was no need for the Trusts, and through her counsel has admitted the Residuary Trust was never funded; there was never a termination or winding up of either of the Trusts. CR 207 ("was never funded"), Supp. CR 13-14 (never terminated or wound up). When the Receiver asked Hazel's counsel to provide documents reflecting or referring to the assets or affairs of the Trust, Hazel's counsel reported that Hazel "[h]ad *no* documents … that pertain to any trusts …." CR 125 (emphasis added).

The assets that should have gone into the Trusts are held today in the name of Hazel (personally or her living Trust) or in the name of Appellant, Cliff Hoskins. App. C at p. 13-15. Cliff controls Hoskins Inc. now. For the purposes of this appeal there is no need to distinguish between Cliff and Hoskins, Inc., so Appellees will refer to both Appellants here as "Cliff."

## 2. A Receiver For Cowboy's Estate Was Appointed Long Ago

In litigation involving Cliff and Hazel on one side and Cliff's brother and Hazel's son Len on the other, a bankruptcy court ordered disputes between Len, Hazel, Cliff and Hoskins, Inc. to be arbitrated. Supp. CR 103; *see*, *Hoskins v. Hoskins*, 2014 Tex. App. LEXIS 11382, *5, n.2 (Tex. App.—San Antonio Oct. 15,

4

2014, pet. granted). The Arbitrator resolved the disputes in part by appointing, at Len's request, a Receiver. Supp. CR 103; accord, App. A. The arbitrator severed Len's claims against Hazel, individually and as Executrix, for breach of fiduciary duty and Trust Code violations and appointed Marcus Rogers as Receiver on April 16, 2013. *Id.* The Receiver was ordered to "take possession of all Trust Property and administer the Trust[s] pursuant to [their] terms; determine whether Hazel Hoskins is capable of continuing as Trustee; make such recommendations as he may deem appropriate; and deliver a report to the Arbitrator no later than June 30, 2013." App. A; Supp. CR 103. Unfortunately, the arbitrator dismissed Len's inextricably intertwined claims against Cliff for aiding and abetting Hazel's breaches of fiduciary duty and Trust Code violations, and his request for rescission of the transfer to Cliff of property owned by Hoskins, Inc. It is that dismissal order that Len has appealed; the Texas Supreme Court has granted Len's petition for review. The order appointing receiver, which Len requested, is not on appeal.

The Receiver made the written report the Arbitrator ordered on July 28, 2013. App. C, Supp. CR 13-42.

Appellee Rex Hoskins filed an Application to remove Hazel from all her various capacities—executor and trustee—in the Probate Court in Live Oak County, Judge Joe Loving presiding, on October 9, 2013 (Supp. CR 4-42). The Receiver filed a motion to confirm his appointment in that action in November 2013 (CR 9),

5

then filed a First Amended Petition for an Accounting in the Probate Court on May 6, 2014, asking Judge Loving to compel Hazel to account for the assets and affairs of the Trusts. CR 9, 188. Hazel filed a plea to the jurisdiction and a plea in abatement, objecting to the Receiver's request because, among other reasons, she said the Receiver was not properly appointed by the Arbitrator and lacked standing to request the accountings. CR 92. Hazel asked the Probate Court to dismiss the Receiver's petition for lack of jurisdiction because, Hazel contended, the Receiver had not been properly appointed. CR 81-83. No other party filed an objection to the Receiver's request for an accounting. CR, *passim*.

In May 2014—*sixteen months before the Order from which Cliff now appeals*—the Probate Court signed written orders denying Hazel's plea to the jurisdiction and plea in abatement. CR 199, 200. Hazel did not appeal.

The Probate Court recognized the prior appointment of the Receiver at an evidentiary hearing in July 2014[2], and signed an "Order on Receiver's First Amended Petition" on August 1, 2014 (App. D), ordering Hazel "to file complete and accurate accountings of the Estate from April 2, 1985, until the date of the accounting . . . ." (CR 310). The court ordered "that the accounting for the Estate shall be filed with the Court . . . and that the accountings for the Trusts **shall be delivered to Marcus Rogers, Receiver** . . . ." (*id.*) (emphasis added). *That order was*

---

[2] RR July 3, 2014, at p. 210; CR 310.

6

*entered more than a year before the Order from which Cliff now appeals.* No party appealed that order.

### 3. Recent Probate Court Proceedings

Two weeks after the Probate Court denied her plea in abatement and plea to the jurisdiction to the Receiver's request for confirmation of his appointment, on May 28, 2014, Hazel resigned as Independent Executor and as Trustee and asked the District Court of Live Oak County to appoint two new successor Trustees of the Marital Deduction Trust and Residuary Trust.[3]  CR 201-22.  The District Court appointed Joe Carter to serve as the Trustee of the Marital Deduction Trust and George Morrill, III to serve as Trustee of the Residuary Trust, as Appellants recognize.  Ant Br. at p. 3; accord, CR 381.

The Probate Court also appointed a Dependent Administrator to administer Cowboy's Estate on August 18, 2014.  Supp. CR 130-31.  In that order the court directed the administrator to "bring the affairs of the said Estate to a conclusion and deliver the remaining assets to the duly appointed trustees and/or the duly appointed receiver." *Id.* at 130.

The Dependent Administrator filed a declaratory judgment action joining into the Probate Court proceeding all of Cowboy's children, grandchildren, and

---

[3] Cowboy's Will provided that the district court judge acting as an individual and not in an official capacity would appoint successor trustees.

associated corporate entities as parties, and seeking determinations on no less than nine topics, such as "Do any assets remain in the estate?," "Do estate assets exist that were never included in the estate . . . that should have been?," "Were estate assets improperly distributed from the estate?," and "Tracing of estate assets." CR 379-388.

The new Trustees appeared in the Probate Court. CR 346, 431, Supp. CR 143. Echoing observations Judge Loving had made from the bench in July 2014,[4] the Successor Trustees contend that no assets ever should have gone into the Marital Deduction Trust; instead, all of the assets should have gone into the Residuary Trust. CR 346-48, 472-73, Supp. CR 143. Both Successor Trustees contend Hazel mismanaged the Estate and breached fiduciary duties. CR 347, Supp. CR 143 (Successor Trustee of Residuary Trust), 472-73 (Successor Trustee of Marital Deduction Trust).

### 4. The Probate Court Confirms the Previously-Appointed Receiver

Three of Cowboy's grandchildren asked the Probate Court to honor the prior appointment of the Receiver so that Hazel's continuing challenge to the prior appointment would be resolved. CR 373. Both Successor Trustees and other beneficiaries also joined in the request for confirmation of the Receiver.[5] Hazel filed

---

[4] RR July 3, 2014, at p. 19 (Judge Loving observing value of assets exceeding marital deduction limit and that they "couldn't have gone into the marital trust….").

[5] CR 153-54, 391-92, 400, 403-07, 434-35, & 472-73.

a written opposition before the hearing on July 15, 2015. CR 411. *Cliff filed no opposition before the hearing*. CR, *passim*.

*At the hearing on July 15, 2015, counsel for Cliff said not a word in opposition to the Motion* (RR, *passim*). The Probate Court, Hazel's counsel, counsel for the Appellees, and counsel for the Receiver discussed the obvious facts appearing without dispute from the Court's record as well as the legal issues attendant to appointing a receiver. *Id*. The Probate Court asked for additional post-hearing briefing. No one said anything before or at the hearing to alert the Probate Court to an argument that there was a disputed fact issue for which evidence was wanted or required. *Id*.

After the hearing and post-hearing briefing, the Probate Court signed the Order Appointing Receiver which tasks the Receiver with the following limited but critically important and necessary responsibilities: "[T]o determine, per the terms of the Will, . . . which assets, if any, should have been distributed from the Estate to the Marital Deduction Trust and/or to the Residuary Trust; and . . . where each of the assets is currently located, the current ownership of each asset, and the approximate fair market value of each asset." CR 477-78. Following receipt of the Report, the Dependent Administratrix "shall file a Motion with the Court seeking authority to transfer the assets or claim for the assets to the [Trusts];" delivery of assets is tasked to the Administrator in her August 2014 appointment. CR 478, Supp. CR 130-31.

Only Cliff and Hoskins, Inc. appeal from that order; no other party contests the appointment of the Receiver. Curiously, Hazel, who was the party who filed nearly every one of the pleadings in opposition to the Receiver, did not join in this appeal.

## SUMMARY OF THE ARGUMENT

The Probate Court's Order is simply an interlocutory confirmation of a prior order appointing a receiver, and is not appealable under Section 51.014 of the Civil Practice and Remedies Code. In the alternative, if the order is appealable, at least one prior order similarly confirming the Receiver had been entered and it was not appealed; this appeal is therefore too late. This Court lacks jurisdiction over this Appeal and it should be dismissed.

The Probate Court acted well within its discretion in confirming, in this proceeding, the prior appointment of the Receiver and giving him narrow duties—writing a report (1) to identify which of the assets of the Estate should have been distributed to the Marital Deduction Trust and which to the Residuary Trust and (2) to say, if possible, the current location, value, and ownership (or state of legal title) of each of those assets today. App. B, CR 477.

While it is true that appointment of a receiver is often a drastic and intrusive remedy -- because a receiver often takes over control and management of operating businesses or valuable assets -- here, the Probate Court's confirmation of the prior

appointment of this Receiver does nothing like that. The Probate Court simply confirmed the prior appointment with a limited charge: to report on the identity, location, title, and value of the assets that should have gone into the Trusts. CR 477.

It is uncontested that Hazel Hoskins never made any accounting of or for any asset that should have gone into either Trust for decades. The Probate Court properly honored and confirmed the earlier appointment of the Receiver, and did so crafting a narrow, restrained order that balances the competing interests of the many parties in the Probate Court. The court acted well within its discretion in using the previously-appointed Receiver as an efficient resource in identifying and attempting to account for the assets that should have gone into the Trusts. The Probate Court's order should be affirmed.

## ARGUMENT

**I.     The Probate Court's Order Simply Confirms a Prior Order Appointing Receiver; the Appeal Should Be Dismissed**

An Arbitrator appointed this Receiver in 2013, on Appellee Leonard Hoskins' motion in that proceeding. App. A. Cliff admits "the arbitrator appointed Marcus Rogers as receiver of the assets of the Martial Deduction Trust and the Residuary Trust." Ant Br. at 2. Probate Court Judge Loving's Order Appointing Receiver confirms a narrow aspect of that prior order. In addition, the Probate Court previously entered orders recognizing and/or confirming the Receiver's position, which Appellants did not appeal. CR 310 (App. D), Supp. CR 130. The order

11

Appellants have sought to appeal is not appealable, or if it is, then prior similar orders were not appealed, so this appeal is too late.

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1) allows for an interlocutory appeal from an order that "appoints a receiver." The Receiver here was already appointed in 2013. This Receiver filed pleadings and motions in the Probate Court which were ruled upon long before the Order from which Cliff appeals was entered. CR 9, 188, 194. The Probate Court signed orders more than a year earlier recognizing the role of the Receiver in the Probate Court. CR 199, 200, 310, Supp. CR 130. At the hearing on July 3, 2014, Judge Loving recognized the obvious—Hazel needed to provide accountings for the two Trusts and she needed to give the accountings to the Arbitrator-appointed Receiver. Judge Loving said:

> That accounting should be done twofold: One to Mr. Rogers *in his capacity as … the receiver* of the two trusts with the Court receiving also that report
>
> …
>
> [He—*i.e.*, the Receiver] is the one that needs to have that *as receiver*. He *has been appointed* [previously as] *receiver* ….

RR July 3, 2014, at p. 210 (emphasis added).

Then, on August 1, 2014, the Probate Court signed the "Order on Receiver's First Amended Petition" against Hazel, and ordered Hazel to file a complete and accurate accounting for each of the Trusts, which "shall be delivered to Marcus Rogers, Receiver . . . ." CR 310 (App. D).

12

None of these orders was ever appealed.

The Probate Judge made the point again at the July 15, 2015, hearing: "I have recognized Mr. Rogers as the Receiver," and this was nothing more than a confirmation. RR July 15, 2015, at pp. 69, 75, 90. Judge Loving clearly understood that the Receiver had already "been appointed" by the Arbitrator after the bankruptcy Court had ordered arbitration and that the Receiver had "the duty and responsibility under [the] federal bankruptcy court to proceed in that capacity." RR July 15, 2015, at p. 158. The Probate Court clearly confirmed what the Arbitrator had already put in place.

Thus, the Probate Court's Order is an interlocutory confirmation of a prior arbitration order appointing a receiver. That order is not appealable and this appeal should be dismissed. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1). In the alternative if this order is appealable, then previous similar orders confirming the Receiver were also appealable (CR 310, Supp. CR 130) and those orders were not appealed. So this appeal is too late. TEX. R. APP. 26.1(b).

## II. The Law Regarding Receivers

As this Court knows well, "A trial court has broad powers to enlist the aid of a receiver in order to effectuate its orders and judgments." *Tugman v. Tugman*, 2008 Tex. App. LEXIS 3914, * 11 (Tex.App.—Corpus Christi-Edinburg 2008, no pet.). The use of a receiver is reviewed for abuse of discretion, that is, the trial court must

13

have acted without reference to any guiding rules or principles, arbitrarily and unreasonably. *Id.* at * 12 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)). "The mere fact that a trial court may decide a matter within its discretionary authority in a manner different from that of an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Id.*

The Texas Property Code authorizes the use of a receiver "to remedy a breach of trust that has occurred." TEX. PROP. CODE § 114.008; *accord*, *Pfeiffer v. Pfeiffer*, 394 S.W.3d 679, 680 (Tex.Civ.App.—Houston [1st Dist.] 1965, writ dism'd) (court did not abuse its discretion by appointing a receiver when there was alleged misconduct on the part of the trustee).

Texas Civil Practice and Remedies Code permits a receiver in any "action between partners or others jointly owning or interested in any property or fund." TEX. CIV. PRAC. & REM. CODE § 64.001(a)(3); *accord*, *In re Estate of Trevino*, 195 S.W.3d 223, 231 (Tex. App.—San Antonio 2006, no pet.). When there is a danger that jointly owned property is at risk of being damaged or lost without a receiver, a receiver is proper. *Id.*

In addition, the rules of equity allow the appointment of a receiver under Civil Practice and Remedies Code Section 64.001(a)(6). In that event, the statute "does not require" a showing that any property is "presently in danger of being lost,

14

removed, or materially injured." *Trevino*, 195 S.W.3d at 231. The court need only conclude that appointment of a receiver will provide an efficient mechanism for resolving a significant dispute among those jointly interested in an estate. *Gonzalez v. Gonzalez*, 469 S.W.2d 624, 632 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.) (holding the "trial court erred in overruling . . . application for . . . appointment . . . of a receiver" when "appointment of a receiver" would "solve most, if not all, of the . . . problems" in the estate).

A probate court cannot abuse its discretion in ordering a court-supervised professional to account for the assets of a testamentary trust in the process of a dependent administration – that is, when the court is exercising ongoing control over the administration. E.g., *Trevino*, 195 S.W.3d at 229. Cliff offers no argument or authority to question this basic rule. Nor is there any abuse of discretion when a probate court tasks a receiver to assist the personal representative in performing a task necessary for the administration of the estate when the personal representative is an <u>independent</u> executor. *Trevino*, 195 S.W.3d at 228-30 (it is "well established that a probate court's order appointing a receiver does not impermissibly interfere with the independent administration of the estate."). A receiver is even more appropriate when the administration is dependent and fully subject to probate court supervision -- because the Receiver is simply part of the administrative process. *Id.*

In addition, Courts often find appointment of a receiver to be a proper remedy

for managing protracted litigation involving family disputes like this. *See, e.g., Gonzalez*, 469 S.W.2d at 632 ("appointment of a receiver will solve most, if not all, of the vexations …."); *see also Trevino*, 195 S.W.3d at 231-32 ("probate court could have determined that the appointment of a receiver would resolve two years of ongoing litigation …").

## III. The Order Is Not Harsh Or Drastic

It's true, as Cliff says, that the appointment of a receiver is often a harsh and drastic remedy. (Ant Br. at 9). That's because generally, courts appoint receivers to take over control and management from the owners or managers of privately owned businesses or revenue-generating assets. *See, e.g., Elliott v. Weatherman*, 396 S.W. 3d 224, 226 (Tex. App.—Austin, 2013, no pet.) (receiver appointed over $1.2 million in assets); *Krumnow v. Krumnow*, 174 S.W.3d 820, 825 (Tex. App.—Waco 2005, pet. denied) (receiver appointed to sell assets).[6]

The Probate Court's Order here, though, does nothing of the kind. The

---

[6] Cliff cites *Elliott v Weatherman* and *Krumnow v. Krumnow* on the standards for appointment of a receiver. The key issue involving the appointment of a receiver in both of those cases, though, was whether the trial courts erred by appointing the receiver to take control over assets with absolutely no prior notice to the complaining party before the courts did so. *Elliott*, 396 S.W. 3d at 229 ("threshold issue" is whether complaining parties "received proper notice …" and whether "oral request for receivership at conclusion of the temporary injunction hearing [was] sufficient"); *Krumnow*, 174 S.W.3d at 830 ("trial court erred in appointing a receiver without notice"). Here, of course, Cliff had several weeks' notice before the July 15, 2015, hearing on the motion to confirm the Receiver, and still Cliff filed no objection whatsoever. And here, unlike the facts in *Elliott* or *Krumnow*, an Arbitrator had already appointed the Receiver.

Arbitrator charged the Receiver with taking possession of the Trust Property and administering the Trusts. App. A, CR 15. The Probate Court limited the Receiver's charge, for now, simply to reporting on the existence, location, and value of the assets that should have gone into the Trusts years ago. CR 477-78. There is nothing harsh or drastic about that; the Probate Court simply directed a court-supervised professional to report on estate assets.

The essence of the job under the Order is simply to inventory what should have been in Cowboy's Estate in 1985 and to try to account for where those assets are today. CR 477-78. The Court might have titled that job function "auditor" or "master," but because more than two years earlier the Arbitrator had already appointed the Receiver to do the same work and even more (CR 15), the Probate Court tasked the Receiver to make the report for use in administering Cowboy's Estate. Judge Loving presumed the Receiver would get the same essential information more than a year earlier, when he ordered Hazel to prepare the report and provide it to the Receiver. CR 310. Hazel did not give the Receiver the information ordered (see Receiver's Objections, Supp. CR 132-142), so Judge Loving tasked the Receiver with preparing the report himself.

According to the Receiver's preliminary report, for years Hazel used her fiduciary roles as executrix and trustee of the Trusts, and officer and director of Hoskins, Inc. to benefit herself and Cliff over the other beneficiaries. App. C at p.

17

14, 15. The Successor Trustees agree. CR 346, 434; Supp. CR 143. Without dispute, under Cowboy's will, when Cowboy died in 1985, the bulk of his assets should have gone into the Residuary Trust, and no one has accounted for that Trust even today, thirty years after Cowboy died. There is still no proper accounting of the assets that did go (or should have gone) into the Marital Deduction Trust (Supp. CR 132-142).

The absence of accountings for the Trusts was apparent from the Probate Court's record when Judge Loving received the assignment to preside over this case (see Application to Remove Independent Executrix and Testamentary Trustee and Motion to Appoint Statutory Judge filed by William Rex Hoskins and exhibits attached, Supp CR 4-42). It was apparent at the hearing held in July 2014 after which the court ordered an accounting (CR 310), and it remained clear at the hearing held on July 15, 2015.

The Probate Court did not authorize the Receiver to take control of any assets or to manage any business, or even to sue Cliff for anything (CR 477). The Order simply charges the Receiver with reporting on what was there in 1985 that should have gone into one of the Trusts, where whatever that was is today, and if possible what the assets are worth. App. B, CR 477-78. The court was careful to balance the rights and interests of all parties. All parties have the opportunity to object to the Receiver's report on the assets before the Court or Dependent Administrator take action. *Id*. So at this point, Cliff has no meaningful complaint because he cannot

18

say what assets the Receiver will identify or include in his report, or how the Probate Court will rule on any party's objection, if any is made. Cliff cannot articulate how he is harmed by having the Receiver report on what assets should have gone into the Trusts and what happened to those assets.

While the Probate Court might have called on the Dependent Administrator to do the reporting, asking the previously appointed Receiver to report on the Trust assets makes sense. The Receiver has been involved in the Probate Court proceedings longer than the Dependent Administrator, and knows more of the history of the case. The Receiver already has written an initial report on Cowboy's Estate and the looting of the two Trusts. App. C, Supp. CR 13-42. The Probate Court reasonably concluded that the Receiver's efforts, going back even before the Dependent Administrator was appointed, give the Receiver a comparative advantage. The court did not abuse its discretion.

## IV. No Additional Evidence Was Necessary to Confirm the Prior Order

The Probate Court did not err by confirming the Arbitrator's appointment of the Receiver without additional evidence. This is so for at least three reasons.

### A. Cliff has Waived Opposition

First, the Receiver had participated in the proceedings in the Probate Court and that court had recognized the Arbitrator's appointment of the Receiver for more than a year. The Probate Court heard testimony from the Receiver on July 3, 2014

19

that Hazel had completely failed to make proper accountings[7] and ordered Hazel to account for the affairs of the Trusts from 1985 through August 2014 **to the Receiver**. App. D; *see also* RR July 3, 2014, at p. 210 (ruling from bench). Hazel did not appeal from that order or any implicit ruling appointing Mr. Rogers as Receiver in May or August 2014. Neither did Cliff.

Then, before the July 15, 2015 hearing, the court explicitly rejected Hazel's challenges (not Cliff's, because he filed none) to the Receiver. CR 199, 200. Cliff filed no written opposition to the motion confirming the receiver. CR, *passim.*

At the hearing on July 15, 2015, Cliff's counsel spoke not a single word expressing any opposition to the request for an order from the Probate Court confirming the Receiver. RR July 15, 2015, *passim.* Cliff said nothing before the record closed at the hearing on July 15, 2015, to alert the Probate Court that he opposed the confirmation of the Receiver, that he contended there were no grounds for confirmation of the Receiver, or that he thought evidence was needed at the hearing (*id.*).[8]

---

[7] RR July 3, 2014, at pp. 70-85, 90-91, 93-99, 150, 155, 157, 168. Hazel's counsel all but agreed at that hearing that the Court needed to appoint someone to account for the Trusts. *Id.* at p. 67 (not objecting if court appoints independent person to do accounting).

[8] Hazel is the only party who filed a written opposition to the Motion for Order Appointing Marcus Rogers as Receiver before the hearing. CR *passim.* Only counsel for Hazel and counsel for Blake Hoskins spoke in opposition to the Motion at the hearing. CR 411; RR July 15, 2015, at p. 90, 106. Curiously, Hazel, who passed away after the filing of this appeal, did not join this appeal as an Appellant. Blake Hoskins is not an appellant here either.

Cliff expressed no opposition until he joined in a written submission to the Court *after* the hearing on July 15, 2015. CR 444. Even then, nothing in that written submission alerted the Probate Court to anything like an argument that the Court needed evidence to support what the Arbitrator had already ordered and what the Court had already ordered more than a year before (*id*.).

The fact that there had never been an accounting for the assets or affairs of the Trust was <u>undisputed</u> on July 3, 2014, was <u>undisputed</u> on July 15, 2015, and remains <u>undisputed</u> today (*see* Supp. CR 132-142, Receiver's Objections to Accounting). Cliff (and the others with whom he joined) argued post-submission legal points based on the Court's record (CR 444-463), which included the hearing from <u>July 3, 2014</u>, at which the Court heard testimony from the Receiver on the complete absence of any accounting for the assets or affairs of the Trusts and after which the Probate Court entered the order on the Receiver's First Amended Petition.

Cliff, thus, waived any complaint that an evidentiary hearing was needed or that evidence was necessary for the Probate Court to confirm the prior appointment of the Receiver. *Cf. Marlow v. Palm Harbor Homes*, 2002 Tex. App. LEXIS 6371, *7 (Tex. App.—Houston [14th Dist.] Aug. 29, 2002, no pet.) (party never objected to trial court compelling arbitration without evidentiary hearing).

### B. Cliff has No Standing to Object to the Appointment of a Receiver for the Trusts

Hazel's death **after** the Probate Court made its Order does not change the

21

analysis. The Probate Court could not err by not considering something that had not happened. In addition, Cliff has no standing to object to the Probate Court's Order confirming a Receiver for the Trusts. Only the Trustees would have standing. The Trustees speak for the Trust, not Cliff. *Interfirst Bank-Houston, N.A. v. Quintana Petroleum Corp.*, 699 S.W.2d 864, 874 (Tex. App.—Houston [1ˢᵗ Dist.] 1985, writ ref'd n.r.e.); *see Grinnell v. Munson*, 137 S.W.3d 706, 714 (Tex. App.—San Antonio 2004, no pet.). Even after Hazel's death, the Trustees still manage and speak for the Trusts now until the Probate Court says they do not. A trustee retains his authority on behalf of a trust to wind down and make a final accounting even after an event terminating the trust. TEX. PROP. CODE § 112.052; *Sorrel v. Sorrel*, 1 S.W.3d 867, 870 (Tex. App.—Corpus Christi 1999, no pet.). The Trustees have not appealed from the Order Appointing the Receiver. Indeed, the Trustees supported and joined in the request for the appointment of the Receiver (CR 346, 431, 434; Supp. CR 143).

### C. The Probate Court Record and Procedural History Support the Confirmation Order

The need for the Receiver to report on the assets of the Trusts is obvious from the Probate Court's record and procedural history. This Court recognized the "real necessity … for the appointment of a receiver" in *Gonzalez v. Gonzalez* from "the pleadings, the extended colloquy between the trial judge and counsel for the parties," and other statements "in the record." *Id.*, 469 S.W.2d at 632. This was true even

22

though the trial court in that case had declined to hear any evidence at all on the subject. *Id.* In *Tugman*, *supra*, this Court found that while several hearings in the case solely consisted of arguments of counsel, the court did find an affidavit, a stipulation, and sworn testimony in other places in the record that supported the court's appointment of a receiver. *Id.*, 2008 Tex.App. LEXIS 3914, * 14.

Further, when applying the abuse of discretion standard as required here, "the reviewing court must view the evidence in the light most favorable to the actions of the trial court and indulge every legal presumption in favor of the judgment." *Tugman*, at **12-13.

In this case, the record establishes that Cowboy Hoskins died in 1985. Thirty years later, there was still no inventory or accounting of or for the Trusts—no proper accounting for the Marital Deduction Trust and nothing at all for the Residuary Trust (CR 188, 223 [Petitions for Accounting]; App. C, Supp. CR 13-42 [Receiver's Report]; Supp. CR 4-42, 43-86 [Applications to Remove Executrix and Trustee with exhibits]; Supp. CR 132-142 [Receiver's Objections to Accounting by Hazel]).

The Arbitrator "appointed [the] Receiver under Section 114.008(a)(5) of the Texas Property Code,"[9] which as stated above applies to remedy a breach of trust. The record clearly supports the finding implicit in the Arbitrator's Order that Hazel had breached fiduciary duties to the beneficiaries of the Residuary Trust. Both

---

[9] App. A, CR 15-16.

23

Successor Trustees contend there were significant improprieties and breaches of fiduciary duties in the administration of Cowboy's Estate. CR 346, 431, 434; Supp. CR 143. The Dependent Administrator thinks there are questions of improprieties and filed a lengthy Declaratory Judgment Action listing nine issues to be determined. CR 326-28.

The Receiver obviously believes there are significant improprieties and breaches of duty, having sought an accounting. CR 9, 188, 223. Hazel's counsel all but agreed on the record on July 3, 2014—a year earlier—that it would be appropriate for someone to prepare an accounting for the Trusts. RR July 3, 2014, at p. 67. The court heard testimony from the Receiver at the July 2014 hearing that Hazel had failed to make proper accountings. RR July 3, 2014, at pp. 70-85, 90-91, 93-99, 150, 155, 157, 168. At that hearing the court clearly recognized the need for someone to account for the Estate assets that should have gone into the Trusts. RR July 3, 2014, at p. 16-21 ("[m]y concern is there is no way of knowing …" and observing a successor trustee would not know what to do without knowing "what goes where to fund those trusts…"); and at p. 210 (ordering Hazel to account to the Receiver).

The Hoskins family had litigation or an arbitration pending or freshly concluded in at least one of several forums for decades (*see* CR 382-384, listing of lawsuits in Pet. for Declaratory Judgment).

There can be no genuine dispute about whether Hazel breached duties to the Trusts. After the Probate Court ordered Hazel to file accountings for "each Trust from April 2, 1985 until the date of the accounting" on August 1, 2014 (CR 310; accord RR July 3, 2014, at p. 210), a year later on July 15, 2015, the Probate Court still did not have a proper accounting for the Trusts. At the July 2015 hearing the court expressed the great difficulty it had in the case because of the lack of information about what the assets were in 1985 or what had happened to them. RR July 15, 2015, at pp. 54, 56. *Hazel never did anything to account for the Residuary Trust.* The Probate Court could tell from all the records and accountings that still did <u>not</u> exist that "Mr. Hoskins' estate was never properly administered." RR July 15, 2015, at p. 53. And the Probate Court still needed to know what the assets of the Estate should have been. RR July 3, 2014, at p. 158 & 171 (still needing to "find out assets of the estate …").

Facts and circumstances supporting the appointment, or, as here, confirmation of a receiver appear from the Probate Court's record and no additional evidence was necessary. The undisputed facts and circumstances apparent from the Probate Court's records made clear to the Probate Court that the Arbitrator properly appointed the Receiver in 2013 and the receiver needed to be confirmed. The record supports that confirmation.

25

## D. Additional Bases for Affirmance

Confirmation of the Receiver was proper under section 64.001(a)(3) of the Civil Practice and Remedies Code, which provides for the appointment of a Receiver when multiple parties assert claims or interests in the same assets. Here, the Successor Trustees contend that assets Cliff and Hazel have said are theirs should have gone into the Trusts—more specifically, into the Residuary Trust. It also was an undisputed fact for the Probate Court that multiple parties claimed interests in the same assets. Hazel and Cliff have claimed the assets for themselves. The Successor Trustees and the Receiver contend the assets belong to the Residuary Trust.

Cliff says now for the first time on appeal that appointment of a Receiver under Section 114.008(a)(5) of the Property Code can only be used to remedy a breach of a duty by a trustee still serving at the time the receiver is appointed. Ant Br. at p. 13-14. Section 114.008(a)(5) says nothing like that, and Cliff cites no authority for that argument in this Court. Cliff never offered that argument to the Probate Court, so it is waived. TEX. R. APP. P. 33.1.

The Probate Court was well within its discretion to conclude that the Receiver is better placed than either of the Successor Trustees or the Dependent Administrator to prepare the report on the assets of the Trusts. The Receiver has already prepared an initial written report on the history and status of the Estate. Supp. CR at p. 13-42. The Probate Court correctly recognized in 2014 that a successor trustee could

26

not even know the assets over which he served as a trustee until a written report identified those assets. RR July 3, 2014, at p. 21. The record shows, accordingly, that neither Successor Trustee nor the Dependent Administrator[10] had yet undertaken to prepare such a report; and none of them has objected to the Probate Court or to this Court that the Receiver should not be the one to prepare the report (CR, *passim*). None of them has filed an appeal.

In addition the Successor Trustees lack the resources they need to marshal or protect the assets that should have gone into the Trusts. *Id*. In fact, the Successor Trustee for the Residuary Trust informed the Probate Court that if the court did not confirm the Receiver to assert claims to the Trust assets, the Successor Trustee would need an ad litem to do that job; without the help of the Receiver or an ad litem, the Successor Trustee said he would resign. Supp. CR 153-54. The Successor Trustee for the Marital Trust also told the Probate Court the Trusts lacked the resources so that without the Receiver the Trustees would not be able to pursue the rights of the Trusts. RR, July 2015, 113-14.

Hazel never prepared a report in the almost three decades after Cowboy died. Cliff has never offered in the Probate Court or in this Court to step up as a fiduciary

---

[10] Perhaps the Dependent Administrator should have prepared such a report by now. She hasn't, though. Cliff says she has "abdicated" her responsibilities. Ant Br. at p. 22. Whether Cliff is right or wrong about that doesn't matter. Cliff hasn't asked the Probate Court to remove her; removal of the Dependent Administrator is not the issue in this appeal. Even if she were an independent executrix, the Probate Court would have had the authority to appoint a receiver to assist in the administration of the Estate. *Trevino*, 195 S.W.3d at 228-30.

to all beneficiaries and candidly account for the information the Probate Court has ordered from the Receiver. The record clearly supports the Probate Court's confirmation of the 2013 appointment of the Receiver.

**V.  Cliff's Complaints About Compensation To The Receiver Are Moot And Waived**

Finally, the Court should reject Cliff's complaints regarding compensation of the Receiver. Ant Br. at p. 23. The fees and expenses of a receiver are considered court costs. *Rusk v. Runge*, 2003 Tex.App. LEXIS 9615, * 9 (Tex.App.—Houston [14th Dist.] Nov. 13, 2003, pet. denied). The court has wide discretion in deciding how to assess costs. *Id.* In the final judgment, the court can assess costs against the party or parties who lose on the merits, or can allocate the costs among all parties if there is reason for doing so. *Id.*

The Arbitrator—not the Probate Court—originally ordered that Leonard Hoskins would pay the Receiver. App. A. Cliff doesn't mention the fact that the Arbitrator contemplated the possibility that Hazel would be required to pay the fees at the conclusion of the proceedings. (*Id.*) What is more, the Probate Court rejected the Arbitrator's fee arrangement and ordered that the Receiver will be paid by the Estate. App. B.

Thus, Cliff's complaints about the prior payment arrangement the Arbitrator established are empty. First, they are moot because the Receiver is now being paid by the Estate, not by Leonard. Second, Cliff never said a word to the Probate Court

28

about any complaints about the Receiver's compensation until *after* the hearing on July 15, 2015 (as stated, he filed no opposition to the Receiver and did not make any argument at the hearing). Third, neither the Receiver, the Movants who asked the Probate Court to confirm the appointment of the Receiver, nor the Successor Trustees had any responsibility for the compensation arrangements the Arbitrator ordered. There is no evidence that Leonard Hoskins desired or requested the prior compensation arrangement. In the end, the Probate Court removed the arrangement on which Cliff bases his Complaint.

Nor is there any substance to (or evidence supporting) Cliff's complaint that the Receiver is biased. The Receiver has taken an oath to serve as Receiver. There is no allegation—let alone evidence from any party—that the Receiver has violated that oath or any of his duties as Receiver. RR, July 2015, *passim.* The testimony of the Receiver relied on by Appellants in the trial court actually confirms that the Receiver is doing his job properly. (CR 457-62) (CR 461: "Well, I started off with sort of a blank slate, Joyce, looking for information, and the information I was provided by both sides from all the pleadings has indicated that there's some real questions about what happened. And I've formed some opinions but I don't have, you know, enough to say they're final and conclusory opinions.") The excerpts proffered in no way show any bias or prejudice. Reviewing the evidence in the light most favorable to the trial court's order, Appellants fail to establish that the Probate

Court abused its discretion.

## CONCLUSION AND PRAYER

Because the Order is an interlocutory confirmation of an arbitration decision, it is not appealable under Section 51.014 of the Civil Practice and Remedies Code. Further, several prior orders confirming the Receiver were not appealed.

The Probate Court did not abuse its discretion in recognizing the Receiver the Arbitrator appointed for the Trusts and charging the Receiver with reporting on the assets that should have gone into the Trusts. The need for the report is obvious; the circumstances showing the need for the report are undisputed and well-chronicled in this record. Selecting the Receiver to do the reporting was within the Probate Court's discretion. Ordering a court-supervised professional to report on the assets that should have funded testamentary trusts decades ago is not harsh or drastic.

This Court should dismiss this appeal, or affirm the Probate Court's Order. Appellees pray the Court to do so. They pray for all other relief to which they are entitled.

Respectfully submitted,

Law Office of Audrey Mullert Vicknair
802 N. Carancahua, #2100
Corpus Christi, TX 78401
(361) 884-5400 Telephone
avicknair@vicknairlaw.com

BY: */s/ Audrey Mullert Vicknair*
    Audrey Mullert Vicknair
    State Bar No. 14650500

*Counsel for All of these Appellees*

Bingham & Lee, P.C.
319 Maverick Street
San Antonio, Texas 78212
(210) 224-1819 Telephone
royal@binghamandlea.com

BY: */s/ Royal B. Lea, III*
    Royal B. Lea, III
    State Bar No. 12069680

*Counsel for Appellees Lee Roy Hoskins, III, Lee Ann Hoskins Kulka, and Andrea Clare Jurica*

Ylitalo Law Firm
319 Maverick Street
San Antonio, TX 78212
(210) 846-8595 Telephone
d.ylitalo@ylitalolaw.com

BY: */s/ David L. Ylitalo*
    David L. Ylitalo
    State Bar No. 22155500

*Counsel for Appellees Leonard Hoskins, William Rex Hoskins, and Daniel Kenton Hoskins*

31

## CERTIFICATE OF COMPLIANCE

I certify that by my signature below that, according to the feature of the Word program used to create this Brief, this Brief contains **7,644** words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1), and is in compliance with Rule 9.4(i) of the Texas Rules of Appellate Procedure.

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair
Royal B. Lea, III
David L. Ylitalo

## CERTIFICATE OF SERVICE

I hereby certify that, on the 17th day of December, 2015, a true and correct copy of the above and foregoing has been served by: ☐ **United States First-Class Mail**; ☐**Facsimile Transmission**; ☐**CM/RRR**; ☒**E-Mail – tex.gov electronic service**; and/or ☐**Hand Delivery** on the following:

*All counsel of Record*

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair
Royal B. Lea, III
David L. Ylitalo

**CAUSE NO. 13-15-00487-CV**

---

IN THE THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI-EDINBURG, TEXAS

---

# IN THE ESTATE OF LEE ROY HOSKINS, SR.

---

*On appeal from the Live Oak County Court, Live Oak County, Texas*
*Trial Court No. 1785, Hon. Joe H. Loving, Presiding*

---

## APPELLEES' APPENDIX

A      Arbitrator's Order Appointing Receiver, dated April 16, 2013 (CR 15-16)

B      Judge Loving's Order Appointing Receiver, dated October 1, 2015 (CR 477)

C      Receiver's Report to Arbitrator, dated July 28, 2013 (Supp. CR 13-42)

D      Probate Court's Order on Receiver's First Amended Petition, dated August 1, 2014 (Supp. CR 128)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE #01-23337-C-11 |
| | * | ADVERSARY #01-2120 |
| SOUTHWEST RANCHING, INC., | * | |
| DEBTOR | * | |
| | * | |
| LEE ROY HOSKINS | * | IN ARBITRATION |
| | * | BEFORE |
| VS. | * | THOMAS J. SMITH |
| | * | |
| CLIFF HOSKINS AND HAZEL HOSKINS | * | |

## ARBITRATOR'S ORDER APPOINTING RECEIVER

On the 16th day of April, 2013, Thomas J. Smith, the Arbitrator, considered the request by Leonard K. Hoskins for appointment of a Receiver pursuant to Article 114.008 of the Texas Property Code. After considering such request, the Arbitrator is of the opinion that such Receiver shall be appointed.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED** that Marcus P. Rogers is hereby appointed a Receiver under Section 114.008(a)(5) of the Texas Property Code with the powers and responsibilities set forth therein, as well as those in the Texas Probate Code; and further Receiver shall:

1. Take possession of all Trust Property and administer the Trust pursuant to its terms;

2. Determine whether Hazel Hoskins is capable of continuing as the Trustee;

3. Make such other recommendations as he may deem appropriate; and

4. Deliver a report to the Arbitrator no later than June 30, 2013.

**IT IS FURTHER ORDERED** that MARCUS P. ROGERS, shall be sworn to perform the duties faithfully of Receiver, and shall execute a good and sufficient bond in the amount of $11,000 (Eleven Thousand and No/100 Dollars), conditioned on faithful discharge of his duties as Receiver herein and obedience to the Arbitrator.

For his services as Receiver, Marcus P. Rogers shall receive compensation at the hourly rate of $250.00, plus all expenses, including but not limited to professional fees necessary to assist him

VOL 84 PAGE 26

**Exhibit "1"**

in his duties. Claimant, Leonard K. Hoskins, shall pay said fees and expenses of the Receiver which shall be without prejudice to Claimant's right to seek recovery of these payments at the final hearing of the case in arbitration.

**IT IS FURTHER ORDERED** that the appointment of MARCUS P. ROGERS, as Receiver shall continue until further order of the Arbitrator.

EFFECTIVE DATE: April 16, 2013.

THOMAS J. SMITH, Arbitrator

APPROVED AS TO FORM:

COATS ROSE YALE RYMAN & LEE, P.C.
1020 N.E. Loop 410, Suite 800
San Antonio, Texas 78209
(210) 224-7098
(210) 212-5698 (fax)

DAVID YLITALO
State Bar No. 22155500
ATTORNEY FOR LEONARD K. HOSKINS

LANGLEY & BANACK, INC.
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
(210) 736-6600
(210) 735-6889 (fax)

Emerson Banack, Jr.
State Bar No. 01667000
ATTORNEY FOR HAZEL HOSKINS

VOL 84 PAGE 27

2

Cause No. 1785

| | | |
|---|---|---|
| ESTATE OF | § | IN THE COUNTY COURT |
| | § | |
| LEE ROY HOSKINS, SR., | § | OF |
| | § | |
| DECEASED | § | LIVE OAK COUNTY |

## ORDER APPOINTING RECEIVER

On the 15th day of July, 2015, came on to be heard the Motion of Lee Roy Hoskins, Jr., Lee Roy Hoskins, III, Andrea Clare Jurica, and Lee Ann Hoskins Kulka for an Order Appointing Marcus Rogers as Receiver. Having considered the motion, the responses thereto, and the argument of counsel, the court finds that the motion should be granted in part as follows:

IT IS THEREFORE ORDERED THAT:

1. Marcus Rogers is appointed as Receiver for the Marital Deduction Trust and the Residuary Trust created under the will of Lee Roy Hoskins, Sr. dated July 20, 1982 (the "Will").

2. Bond is set at $50,000.00.

3. The Receiver will be compensated for performing the tasks set forth herein at the rate of $250.00 per hour, to be paid by the Estate of Lee Roy Hoskins Sr. after approval of his fee application by the court.

4. The Receiver shall prepare a written report, utilizing the information contained on the Inventory filed for the Estate of Lee Roy Hoskins Sr.; the 706 Return filed for such Estate; and the Final Accounting filed by Hazel Hoskins in this cause, to determine, per the terms of the Will:

   (a) To the extent the information is available, which assets, if any, should have been distributed, from the Estate to the Marital Deduction Trust and/or to the Residuary

Trust; and

(b)     To the extent the information is available, where each of the assets is currently located, the current ownership of such asset, and the approximate fair market value of each asset.

5.     The Receiver shall serve a copy of the Report on the Dependent Administratrix of the Estate of Lee Roy Hoskins Sr., the Trustees of the Marital Deduction Trust and the Residuary Trust, and all other parties.

6.     Following receipt of the Receiver's Report, the Dependent Administratrix shall file a Motion with the Court seeking authority to transfer the assets or claim for the assets to the Residuary Trust and/or Marital Deduction Trust (the "Motion"). Any party may file objections or responses to the Motion.

7.     Any party may file written objections to the Receiver's report within fourteen (14) days following service of the Report. Such objections will be considered and ruled on by the Court at the hearing on the Administratrix's Motion.

8.     The Trustee of the Marital Deduction Trust and the Trustee of the Residuary Trust shall determine the viability of pursing litigation to recover assets that should have been distributed to his respective Trust.

9.     Additional authority for the Receiver to file litigation to recover assets on behalf of one or both of the Trustees will require further order of the Court.

Signed and Ordered Entered on this ___1ST___ day of October, 2015.

_____
HONORABLE JOE H. LOVING

FILED October 5 A.D. 2015
LIVE OAK COUNTY, TEXAS
IDA VASQUEZ CLERK, COUNTY COURT
BY _____ DEPUTY
AT 1:45 O'CLOCK pm

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE #01-23337-C-11 |
| | * | ADVERSARY #01-2120 |
| SOUTHWEST RANCHING, INC., | * | |
| DEBTOR | * | |
| | * | |
| LEE ROY HOSKINS | * | IN ARBITRATION |
| | * | BEFORE |
| VS. | * | THOMAS J. SMITH |
| | * | |
| CLIFF HOSKINS AND HAZEL HOSKINS | * | |

### REPORT OF RECEIVER

1.      L. R. Hoskins, Sr. ("Cowboy") died April 2, 1984, leaving a Will that was admitted to probate in Live Oak County, Texas. The terms of the Will provided that the entire estate pass to two testamentary trusts created under the Will for the benefit of his wife, Hazel Hoskins ("Hazel"), his children and descendants. These trusts were named the L. R. Hoskins, Sr. Marital Deduction Trust and the L. R. Hoskins, Sr. Residuary Trust ("Residuary Trust"). His children and descendants are current beneficiaries of the Residuary Trust.

2.      Hazel and The National Bank of Commerce were named Co-Trustees. National Bank of Commerce resigned as Co-Trustee in 1985 and no other Co-Trustee ever served with Hazel. Article XIII(g) of Cowboy's Will required the Trustees to account annually to the beneficiaries of the Residuary Trust. Yet, Hazel never accounted to the beneficiaries for assets of the Trusts and never filed Federal Income Tax returns for the Trusts. At a time that Hazel was an officer in a corporation the stock of which was owned by the Trusts, she entered into business transactions favoring one of the Trust's beneficiaries that effectively made the trusts insolvent. The Will does not have a provision authorizing such self-dealing by the Trustee.

1

Hazel has kept no Trust financial records and has never accounted to Trust beneficiaries as required by the terms of the Trusts. While acting as executrix of the Cowboy's estate, she never transferred assets to the Trusts and never kept records of Trust assets. She commingled Trust assets with her own and used Trust assets in personal business transactions. Although the terms of the Trusts prohibit any distributions to herself while she is acting as Trustee, she freely used all the Trust assets as her own. In short, as she stated in her sworn affidavit on February 16, 1994, Hazel took the position that there was no need for these Trusts and she acted accordingly. That document standing alone does not amount to a complete waiver of rights in the trust because it is not clear from the document that it complies with Texas Property Code Section 114.032 and the trustee acted inconsistent with this document subsequent to this date. In addition, this document does not contain the signatures of the grandchildren or persons acting on behalf of the grandchildren. In ignoring the validity of the Trusts, Hazel converted the assets in Cowboy's estate to her own and defeated his estate plan. The intent expressed in his Will showed that Cowboy cared about all his children and grandchildren and made specific provisions in the Trusts for all of them. He even included provisions for his great grandchildren and showed no preference to any one of the beneficiaries. Cowboy trusted Hazel to carry out and protect the intent shown in his estate plan. Texas law does not allow one class of trust beneficiaries of an irrevocable trust to get together and agree that a trust "is not necessary". The rights of all beneficiaries in all classes have the right to be protected, some of whom may not have even been born. In fact, today all beneficiaries own a vested property interest in the assets that should be held in the Trusts.

3.     Today, with few exceptions, assets that should be titled in the name of the Trusts are now titled in the name of Cliff and/or Hazel (individually or in her personal living trust) or still in the

2

estate. Hazel has even claimed the trust is not in existence.

4.     The Order Appointing Receiver of the Marital Trust and the Residuary Trust (the "Trusts") established under the Will of Lee Roy Hoskins, Sr., Deceased (Exhibit A) was issued on April 16, 2013 and referred to section 114.008 (a)(5) of the Texas Property Code, and contained these specific responsibilities:

1. Take possession of all Trust Property and administer the Trust pursuant to its terms;
2. Determine whether Hazel Hoskins is capable of continuing as Trustee;
3. Make such other recommendations as he may deem appropriate; and
4. Deliver a report to the Arbitrator no later than June 30, 2013.

This Report of Receiver satisfies my responsibility under Item number 4.

To undertake these responsibilities, I have spoken with Emerson Banack, counsel for Hazel Hoskins, the counsel for Hazel Hoskins, Trustee of the Trusts and with David Ylitalo, counsel for Leonard Hoskins.

I have received and reviewed numerous documents from Emerson Banack and David Ylitalo. In reviewing the documents we could not locate any document that could remotely be considered an accounting by Hazel Hoskins as Executor and Trustee. That is significant because Cowboy's Will imposes an affirmative duty in Article XIII (g) to account to each beneficiary at least annually. Below see a discussion of who is a beneficiary of the Trusts.

In the performance of my duties, I have retained Glen A. Yale as legal counsel. He and I have attended two court hearings. On June 24, 2013, we went to Corpus Christi and attended a hearing in Bankruptcy Court on an Emergency Complaint for Temporary Injunctive Relief and to Interpret Court's Prior Orders to Determine Where Confirmation of Award Should be Decided, in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division, Leonard K. Hoskins, Plaintiff, v. Colonel Clifford Hoskins and Hoskins, Inc., Defendant, Adv. Pro. No. 13-02010.

VOL 83 PAGE 504

3

Glen and I also appeared in Bexar County District Court on June 25, 2013, at the hearing to confirm the Arbitrator's award before the Honorable Judge Peter Sakai. Emerson Banack, Jr. ("Buddy") announced at that hearing that he was appearing on behalf of Hazel Hoskins as "Trustee" of the Trusts created under the Will of L. R. Hoskins, Sr. In addition, the previous day, in the U. S. Bankruptcy Court for the Southern District of Texas Corpus Christi Division, before the Honorable Richard Schmidt, Mr. Banack also announced that he was "aligned" with the attorneys who represented Colonel Clifton Hoskins ("Cliff") and Hoskins, Inc. If there was any doubt previously that these Trusts exist, it was eliminated then. In fact, Hazel has acted as Trustee of these Trusts in the past and is still acting as Trustee today.

At the hearing in Bexar County District Court, counsel for the Receiver stated that the Receiver was not aligned with Leonard Hoskins, because the Receiver owes fiduciary duties to all beneficiaries.

5. There is no running of any statute of limitations as to claims against Hazel until she accounts to the beneficiaries, which she has not done. And there is no running of any statute of limitations as to any transactions entered into by Cliff or Hoskins, Inc. in bad faith with Hazel. These transactions are not void but they are voidable.

The Supreme Court of Texas held in Ditta v. Conte, 298 S.W.3rd (2009) that there is no statute of limitations for a court to consider removal of a trustee. The court cited Section 113.0821(a) of the Texas Trust Code providing the court wide latitude to remove a trustee for numerous stated actions as well as when the court "finds other cause for removal" and a court's ability to remove a trustee is not held to a particular time period from such breach. The court reasons that, "Because a trustee's fiduciary role is a status, courts acting within their explicit statutory discretion should be authorized to terminate the trustee's relationship with the trust at any time,

4

without the application of a limitations period."

6.     As for the first responsibility of this Receiver: "Take possession of all Trust Property and administer the Trust pursuant to its terms," the trust property now appears to consist primarily of claims against Hazel and Cliff for return of trust property. It is also possible that there is a bank account and some mineral income that is in the name of the Estate of Lee Roy Hoskins, Sr., Deceased, and should be turned over to the Receiver. Please see Exhibit B.

7.     Receiver notes that the beneficiaries of the Trusts are not limited to Hazel, Cliff and Leonard. In Article VI (a) of the Will the Trustee in its discretion is to distribute income it deems appropriate to the benefit of the living members of the class of persons composed of the decedent's wife (only with the joinder of an independent Trustee), his children, *and his grandchildren* (emphasis added). Under Article VI (b) principal shall be available for education, health, maintenance and support of the same beneficiary class. This means that Leonard is not the only current beneficiary to whom the Receiver owes fiduciary duties, but also such duties are owed to the grandchildren currently.

We have identified that there are seven living grandchildren that are entitled to current distributions of income and principal from the Residuary Trust, whose names are:

Lee Ann Hoskins Kulka
Lee Roy Hoskins III
Andrea Claire Hoskins
Blake Clifton Hoskins
Brent Carlson Hoskins
William Rex Hoskins
Daniel Kenton Hoskins

8.     As for the second responsibility, "Determine whether Hazel Hoskins is capable of continuing as the Trustee," that will be answered in two parts. First, this report will address whether she is physically able to continue as trustee and then will address the fiduciary duties of

5

a trustee, and whether Hazel has shown a disposition to follow them in the past, whether her past conduct shows a disposition to follow them in the future, and will address whether I conclude she should continue as trustee.

Today, Hazel appears to be too advanced in age and plagued with the infirmaries that come with age to fully carry the responsibilities of serving as trustee of the Trusts or any trust. In a letter dated July 26, 2012 (Exhibit C), Emerson Banack begged off on having Hazel Hoskins travel to San Antonio to participate in a mediation in which she as trustee was a party. She was 90 years old, as of July 16, 2012, and used a walker to move about her home and other places. Mr. Banack was concerned about the effect on her health, both physically and mentally, in participating in a mediation in San Antonio. According to Mr. Banack's letter if she were to participate in a mediation it would have to be by telephone *at selected intervals* (emphasis added). In summary, this letter indicates that approximately 10 and a half months ago Hazel was unable to fully participate in a mediation to settle the litigation involving the Trusts.

Also, in a letter dated August 28, 2012 (Exhibit D), Emerson Banack, to you as the Arbitrator, again hid behind Hazel Hoskins' age of 90 years to deny providing requested documents, when he stated, "I suggest to Mr. Ylitalo and his client that Mrs. Hoskins is not the only 90 year old person who does not have records and copies of deeds and transactions that occurred during the previous ten years." This shows that Hazel is incapable of adequately maintaining the books and records of the trust.

In addition, I considered the affidavit of Carolyn Burrell. (Exhibit E) Ms. Burrell was a caregiver for Hazel Hoskins and had long-term contact with her. This affidavit given in December 2011 says that Hazel Hoskins does not have a clear and reliable recollection of events that took place

6

VOL. 83 PAGE 507

in 2004. This would indicate that as of December 2011 that Hazel Hoskins did not have sufficient memory of events to serve as trustee of the Trusts.

9.      That Buddy Banack takes the position Hazel is "aligned" with Cliff and Hoskins, Inc., is his admission of her breach of fiduciary duty of loyalty to all the Trust beneficiaries. Buddy Banack has argued that there are no assets left in the Trusts and even that the trust does not exist. These positions reflect the core reasons for Hazel's liability to the beneficiaries of these Trusts and her breaches of numerous fiduciary responsibilities. Throughout the litigation, mediation and arbitration process in this matter, no one acted to protect the interests of all of the beneficiaries of the Trust. There is no doubt that Hazel breached a number of her fiduciary duties in multiple ways.

10.     The Arbitrator has ruled against the claims of Hazel's youngest son, Leonard Hoskins ("Len"), against his older brother Cliff Hoskins and against Hoskins, Inc. (that owned the Tilden ranch) and has severed Len's claims against Hazel for breach of trust. No determination by the Arbitrator has been made as to Hazel's breach of trust, but the appointment of this Receiver is to "take possession of all Trust Property and administer the Trust pursuant to its terms." This order carries with it the responsibility not only to identify any wrongdoing, but to "administer the Trust" with action to protect its only remaining assets... the valuable claims against the wrongdoers. The pursuit of these claims is authorized by the terms of the Trusts and failure to pursue them would constitute further damage to the beneficiaries.

11.     Cowboy also trusted that the provisions he made for his family through his Will would be protected by Texas laws that hold trustees to the very highest standard of care required under the law. Texas Trust Code, Section 114.008 provides remedies for the breach of trustee's duties that include removal and appointment of a Receiver. Even though Hazel has been a party to the

7

litigation in her capacity as Trustee, the Trusts' assets and beneficiaries have not been protected.

Hazel has again, used assets of the Trusts to cover up her wrong doing. All of the beneficiaries of

the Trusts created under Cowboy's Will have the right to be heard and protected. There is no

other remedy under the law to do so, other than removal of Hazel as Trustee and granting the

Receiver power to pursue claims against her and any conspirators. These are the only remaining

assets of the Trusts that Cowboy created under his Will that cannot be ignored.

**12.     FIDUCIARY DUTIES** - Fiduciary duties are the highest duties known to the law. Nathan v. Hudson, 376 S.W.2nd 856, 860-61 (Tex. App.-Dallas 1964, writ ref'd n.r.e.). Texas Courts hold trustees to a "very high and very strict standard of conduct which equity demands." Slay v. Burnett's Trust 187 S.W.2nd 377, 387-88 (Tex. 1945). A trustee consents to have his conduct "measured by the standards of the finer loyalties exacted by courts of equity. That is a sound rule and should not be whittled down by exceptions. Johnson v. Peckham, 1323 Tex. 148, 120- S.W.2nd 786 (Tex. 1938). See also Geeslin v. McElhenney, 788 S.W.2d 683, 685 (Tex. App.-Austin 1990, no writ); Bogert sec. 544. Probably the most famous, and eloquent, description of a "fiduciary" was made by Justice Cardozo in the case of Meinhard v. Salmon, 249 N.Y. 458, 164 N. E. 545-46 (1946):

> "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. ... Only thus has the level of conduct for fiduciaries been dept at a level higher than that trodden by the crowd."

**A.     The Duty of Prudence** - Texas Trust Code Section 117.004 provides that... "a trustee shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust."

**B.     The Duty of Loyalty** - Texas Trust Code Section 117.007 provides: "A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries." The trustee therefore has the duty first and foremost to the trust beneficiaries, and is forbidden from placing himself in a situation where there is a conflict between a trustee's self-interest and its overriding duty to the beneficiaries. See Lesikar v. Rappeport, 33 S.W.3rd 282 (2000) and Slay v. Burnett Trust, 187 S.W.2nd 377 (1945) holding that... "a trustee's duty of loyalty prohibits him from using the advantage of his position to gain any benefit for himself at the expense of his trust and from placing himself in any position where his self-interest will or may conflict with his obligation as a trustee." The duty of loyalty is the hallmark of a fiduciary relationship. The trustee is not permitted to "place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries." Scott sec.170. The duty of loyalty includes the duty not to "self-deal." A trustee who benefits personally from utilizing or dealing with trust property is

VOL. 83 PAGE 599

20

considered to be "self-dealing." Any self-dealing by a fiduciary will give rise to a "presumption of unfairness," and the burden of proving the fairness of the transaction is placed on the fiduciary. Texas Bank and Trust Co. v. Moore, 595 S.W.2nd 502 (Tex. 1980); Pace v. McEwen, 574 S.W.2nd 792 (Tex. App.-San Antonio 1978, writ ref'd n.r.e.); Jochec v. Clayburne, 863 S.W.2nd 516 (Tex. App.-Austin 1993, writ denied). Texas Trust Code Section 117.007 expressly provided that a trustee shall invest and manage the trust assets solely in the interest of the beneficiaries. In Lesikar, the Texas appellate court considered the claim of fraud against the fiduciary. Fraud requires the following elements to be shown: (i) a material misrepresentation, (ii) known to be false when made, or which was asserted without knowledge of its truth, (iii) which was intended to be acted upon, (iv) which was indeed relied upon, and (v) which caused injury. In order for silence or non-disclosure to amount to fraud, there must first be a duty to disclose. Such a duty of disclosure may arise where there is a special or fiduciary relationship. A constructive trust is an equitable remedy the court may use to redress the wrong if a fiduciary acquires property for himself. Specifically, "when property has been acquired under circumstances where the holder of legal title should not in good conscience retain the beneficial interest, equity will convert the holder into a trustee." In such a case, where one party's assets are used by a fiduciary to acquire property for himself, the wronged party may either seek the property itself or it value. In Lesikar, because of the defendant's fraudulent acts in hiding relevant information from the beneficiaries (who the defendants owed the high duty of a fiduciary) and also in using assets of the estate for personal gain, the court ruled that the duty of loyalty was breached and that actual damages for such breach include both general (damages to compensate the plaintiff for loss that could be foreseen by the defendant) and special (damages that may not have been foreseen by the defendant) damages. Further, an intentional breach of fiduciary duty is a tort in which a plaintiff may recover punitive damages. In the fiduciary context, the court notes that an intentional breach may be found when the fiduciary intends to gain an additional benefit for himself.

Hazel violated the duty of loyalty by not properly funding the Trusts and allocating the assets to the Marital Trust versus the Residuary Trust. Hazel was the sole beneficiary of the Marital Trust during her life but was only a discretionary beneficiary of income and a beneficiary of principal for her health, education, maintenance and support along with her children and grandchildren of the Residuary Trust. Attached as Exhibit F is the Affidavit of Hazel Hoskins, dated June 1, 2001 in which she states that at the time her husband's ("Cowboy's") will was probated the Marital Trust of which she was sole trustee and beneficiary owned 37,500 shares of Hoskins, Inc. common stock and 6,269 shares of Hoskins, Inc., preferred stock. Such allocation of stock from her husband's estate to the Marital Trust does not happen automatically and such stock should have been allocated in whole or in part to the Residuary Trust. Such allocation to the Marital Trust was a violation of the duty of loyalty.

      **C.**     **The Duty of Competence** - Texas Trust Code Section 113.006, 113.051. The trustee has an affirmative duty to administer the trust. The fundamental duties of a trustee include the use of the skill and prudence which an ordinary, capable and careful person would use in the conduct of his own affairs. Interfirst Bank Dallas, N.A. v. Risser, 739 S.W.2d 882, 888 (Tex. App.-Texarkana 1987, no writ).

There was a breach of the duty of competence in a failure to fund the trusts and administer them for the benefit of all the beneficiaries.

9

VOL 83 PAGE 519

**D.     The Duty to Take and Retain Control of Trust Property** - The trustee is under a duty to take all reasonable steps to obtain and control the trust property. See Scott sec. 174; Restatement sec. 175.

Here again there was a failure to take possession of the trust property as Trustee of the Marital Trust versus Trustee of the Residuary Trust as mentioned above.

**E.     The Duty to Defend** - The trustee is under a duty to do what is reasonable, under the circumstances, to defend actions by third parties against the trust estate. See Scott sec. 178; Restatement sec. 178.

**F.     The Duty of Impartiality** - Texas Trust Code Section 117.008 provides that... "if a trust has two or more beneficiaries, the trustee shall act impartially in investing and managing the trust assets, taking into account any differing interests of the beneficiaries." See Akin v. Dahl, 661 S.W.2nd 911.

Hazel has violated the duty of impartiality by selling the Trust assets to one beneficiary while ignoring the entreaties and concerns of other beneficiaries. As mentioned above, the grandchildren were also individuals whose concerns should have been taken into consideration in the Trust administration and it appears that throughout the grandchildren have been all but ignored.

In a letter dated August 10, 2012, from Mr. Emerson Banack to Mr. David L. Ylitalo (Exhibit G), Mr. Banack refers to a 2009 mineral deed whereby Hazel transferred all mineral rights in a 12.28 acre tract to Cliff. Mr. Banack does not deny that the transaction occurred but rather that he refused to provide a copy of the deed because presumably Mr. Ylitalo's client already had a copy of the deed. There is probable cause to believe that this conveyance of Trust property did occur and it was a breach of Hazel's duty of impartiality to treat all beneficiaries fairly.

**G.     The Duty of Good Faith** - Texas Trust Code Section 113.051 provides that... "the trustee shall administer the trust in good faith according to it's terms..." See Bergman v. Bergman-Davison-Webster Charitable Trust, WL 24968 (2004). A trustee always has the duty to act in good faith with respect to the assets he or she is entrusted with.

**H.     The Duty to Preserve and Control Trust Property** - Texas Trust Code Section 117.005 and 117.006 provide that "Within a reasonable time... a trustee shall review the trust assets and make and implement decisions concerning the retention and disposition of assets..." See Barrientos v. Nava, 94 S.W.3rd 270 (2002) where a trustee was removed for not taking any action.

**I.     The Duty not to Co-Mingle Trust Funds** - The trustee has a duty to keep trust property separate from other property, and to properly designate it as trust property. Not only is it the trustee's duty to keep the trust property separate from the trustee's own property, but also to keep that property separate from other trusts the trustee may administer. See Scott sec.179; Restatement sec. 179.

There is a letter dated August 10, 2012, from Mr. Emerson Banack, Jr. to Mr. David L. Ylitalo (Exhibit H) in which Mr. Banack refers to a transfer of the mineral rights in a 480.17 acre tract to Hazel's revocable trust. Mr. Banack does deny the conveyance of the mineral rights, but

10

rather refuses to provide a copy of the instrument of conveyance because presumably Mr. Ylitalo's client already has a copy. There is reasonable cause to believe that Hazel did convey Trust property into her own revocable trust and that would be a violation of her duty not to commingle trust funds. As proceeds are realized on these minerals and retained into Hazel's own revocable trust that would be a continuing violation of the duty not to commingle.

**J.     The Duty to Inform and to Keep and Render Accounts to Beneficiaries -** Texas Trust Code Section 113.151 and 113.152 govern a trustee's duty to provide an accounting upon demand by a trust beneficiary. Section 113.151 provides: (a) A beneficiary by written demand may request the trustee to deliver to each beneficiary of the trust a written statement of accounts covering all transaction since the last accounting or since the creation of the trust, whichever is later. If the trustee fails or refuses to deliver the statement on or before the 90th day after the date the trustee receives the demand or after a longer period ordered by a court, any beneficiary of the trust may file suit to compel the trustee to deliver the statement to all beneficiaries of the trust.  See Montgomery v. Kennedy, 669 S.W.2nd 309(1984): This case, decided by the Texas Supreme Court, is instructive on the issue of a fiduciary's duty of full disclosure. In this case, a father died testate, and his Will directed that a fourth of his residuary estate pass in trust to the plaintiff daughter for life with remainder to her children. Father's Will appointed his spouse and his son as co-executors of his estate and as co-trustees of all trusts created under his Will. The surviving spouse mother was largely uninvolved, and the bulk of the fiduciary work was handled by the plaintiff's brother. A key asset in the estate was a real estate company which owned a building in Midland, Texas. The testamentary trust was never funded. During the settlement negotiations, plaintiff's attorney requested various information from defendant's attorney, including balance sheets and income statements for the estate. The statements provided were represented to be current, although they were not. After entering into a settlement agreement with defendant, plaintiff learned of other non disclosed assets. The Supreme Court of Texas noted that "From the earliest times, this court has written that, in the context of a fiduciary's duty of full disclosure... the fraudulent concealment of an asset is extrinsic fraud that will justify a court in setting aside its former judgment in an equitable proceeding." A trustee is under the duty to keep full accounts of the trust estate that are clear and accurate. Scott sec. 172; Restatement sec. 172 and sec.173 which states:

"The trustee is under a duty to the beneficiaries to give them on their request at reasonable times complete and accurate information as to the administration of the trust. The beneficiaries are entitled to know what the trust property is and how the trustee has dealt with it. They are entitled to examine the trust property and the accounts and vouchers and other documents relating to the trust and its administration. Where a trust is created in favor of successive beneficiaries , a beneficiary who has a future interest under the trust, as well as a beneficiary who is presently entitled to receive income, is entitled to such information, whether his interest is vested or contingent."

**K.     The Duty to Adhere to the Trust Instrument** - Texas Trust Code Section 113.082 provides in relevant part: "A trustee may be removed in accordance with the terms of the trust instrument, or, on the petition of an interested person and after hearing, a court may, in its discretion, remove a trustee and deny part or all of the trustee's compensation if: the trustee materially violated or attempted to violate the terms of the trust and the violation or attempted violation results in a material financial loss to the trust."

11

**L.** **The Duty to Refrain from doing Business with the Trust** - Texas Trust Code Section 117.008 which was cited above under the duty of loyalty also applies to restrain a trustee from self-dealing. See Slay v. Burnett Trust, 187 S.W.2nd 377 (1945): In Slay, the court considered whether a trustee could be held accountable for profits made on trust funds. The court weighed whether or not it was appropriate that the suit was brought by current trustees against the trust's former trustees, without the joinder of the beneficiary. The court ruled that "the trustees have the authority to prosecute the suit in their own names and for the benefit of the beneficiary, without making the beneficiary a party." In examining the transaction in Slay that resulted in a substantial profit to the trustees, the court ruled that "Trustees cannot make a profit from the trust funds committed to them, by using the money in any kind of trade or speculation, nor in their own business, nor can they put the funds into the trade or business of another, under a stipulation that they shall receive a bonus or other profit or advantage. In all such cases, the trustees must account for every dollar received from the use of the trust money and they will be absolutely responsible for it if it is lost in any such transactions. By this rule trustees may be liable to great losses while they can receive no profit; and the rule is made thus stringent, that trustees may not be tempted from selfish motives to embark the trust fund upon the chances of trade and speculation."

**M.** **The Duty to Supervise Corporate Management** - Although a trustee is not liable, as a trustee, for his actions as an officer or director of a corporation controlled by the trust, the trustee should have a fiduciary duty to exercise his control for the benefit of the trust beneficiaries. This would require the trustee to supervise corporate management to ensure that the officers and directors of the corporation are at all times managing the corporation in the best interest of the beneficiaries of the trust. Scott sec. 193,193.2, at 155 ("The trustee will be held accountable by the court if in the exercise of his power of control over the corporation he acts for his own interest rather than for the interest of the beneficiaries.); Johnson v Witkowski, 573 N.E. 2d 513.519 (Mass.App.Ct.1991); In Re Koretzky's Estate,86 A.2d 238, 248 (NJ 1951) ("In voting shares of stock, fiduciaries are under a duty to vote in such a way as to promote the interests of the beneficiaries. 2 Scott on Trusts, sec. 193.1, p. 10-47.... And where a fiduciary holds sufficient shares to control actually or substantially the conduct of the corporation, he is under a duty to exercise that control for the benefit of the trust. 2 Scott on Trusts, sec. 193.2, pp. 1049, 1050."); In the Matter of the Estate of Sakow, 601 N.Y. Surr. Ct. 1994); In the Matter of the Estate of Schulman, 568 N.Y.S.2d 669 (N.Y. App.Div. 1991); Jennings v. Speaker, 571 P.2d 358 (Ca. Ct. App. 1977).

13. **ESTATE TAX** - One of the most important steps in the administration of an estate such as the Estate of Lee Roy Hoskins, Sr., would be the distribution of the estate and the funding of the trusts. Within the guidelines established by the Internal Revenue Service rulings and regulations the executor can ideally fund the Marital Trust with high income producing and low appreciating assets of the estate while funding the Residuary Trust with a low income producing but high appreciating assets. If done properly, Marital Trust assets will be included in the federal gross estate of Hazel and subject to estate taxes at her death, but the assets in the Residuary Trust will bypass estate tax at the death of Hazel and pass to the residuary beneficiaries free of estate tax. When there has been a failure to fund the trust and allocate assets between the Marital Trust and the Residuary Trust, as Hazel failed to do, there will be unnecessary estate tax paid upon the

12

death of Hazel. The potential loss to the beneficiaries of unnecessary estate tax could amount to hundreds of millions of dollars.

Upon the death of Hazel, these claims of the Trusts will need to be considered but also the federal estate tax liability properly imposed on the Marital Trust and how that could have been diminished had the Residuary Trust been fully funded and properly administered. The Receiver may have claims against Hazel and others for their negligent failure to fund the Trusts.

**14.    JUDICIAL REMOVAL OF TRUSTEE** – "Texas Trust Code Section 113.082 is the applicable statute governing trustee removal which provides:

'(a) A trustee may be removed in accordance with the terms of the trust instrument , or, on the petition of an interested person and after hearing, a court may, in its discretion, remove a trustee and deny part or all of the trustee's compensation if:

(1) the trustee materially violated or attempted to violate the terms of the trust and the violation or attempted violation results in a material financial loss to the trust;

(2) the trustee becomes incapacitated or insolvent;

(3) the trustee fails to make an accounting that is required by law or by the terms of the trust; or

(4) the court finds other cause for removal.

In summary, my recommendations are:

1.   Hazel should be removed as Trustee;

2.   Receiver should be granted the power to take any action authorized under the trust provisions of Cowboy's Will; including those to protect trust assets and the pursuit of legal claims for the benefit of all beneficiaries.

Respectfully submitted,
LAW OFFICES OF MARCUS P. ROGERS, P.C.
2135 E. Hildebrand
San Antonio, Texas 78209
(210) 736-2222
(210) 881-0200

By:_____
MARCUS P. ROGERS
State Bar No. 17179700
Receiver of the L.R. Hoskins, Sr. Marital Deduction Trust and the L. R. Hoskins, Sr. Residuary Trust

13

VOL 83 PAGE 544

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Report of Receiver has been forwarded to the following, on the 28 day of June, 2013:

Thomas Smith
Attorney at Law
112 E. Pecan, #3050
San Antonio, Texas 78205
via fax (210) 227-8645 & Hand Delivery

David Ylitalo
COATS ROSE YALE RYMAN & LEE, P.C.
1020 N.E. Loop 410, Suite 800
San Antonio, Texas 78209
via fax (210) 212-5698
ATTORNEY FOR LEONARD K. HOSKINS

Emerson Banack, Jr.
LANGLEY & BANACK, INC.
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
via fax (210) 735-6889
ATTORNEY FOR HAZEL HOSKINS

DAVID KINDER
COX SMITH MATTHEWS
112 E. Pecan St., Suite 1800
San Antonio, Texas 78205
via fax (210) 226-8395

_____
Marcus P. Rogers

VOL 83 PAGE 515

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | |
|---|---|
| IN RE: | CASE #01-23337-C-11 |
| | ADVERSARY #01-2120 |
| SOUTHWEST RANCHING, INC., | |
| DEBTOR | |
| | |
| LEE ROY HOSKINS | IN ARBITRATION |
| | BEFORE |
| VS. | THOMAS J. SMITH |
| | |
| CLIFF HOSKINS AND HAZEL HOSKINS | |

### ARBITRATOR'S ORDER APPOINTING RECEIVER

On the 16th day of April, 2013, Thomas J. Smith, the Arbitrator, considered the request by Leonard K. Hoskins for appointment of a Receiver pursuant to Article 114.008 of the Texas Property Code. After considering such request, the Arbitrator is of the opinion that such Receiver shall be appointed.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED** that Marcus P. Rogers is hereby appointed a Receiver under Section 114.008(a)(5) of the Texas Property Code with the powers and responsibilities set forth therein, as well as those in the Texas Probate Code; and further Receiver shall:

1. Take possession of all Trust Property and administer the Trust pursuant to its terms;

2. Determine whether Hazel Hoskins is capable of continuing as the Trustee;

3. Make such other recommendations as he may deem appropriate; and

4. Deliver a report to the Arbitrator no later than June 30, 2013.

**IT IS FURTHER ORDERED** that MARCUS P. ROGERS, shall be sworn to perform the duties faithfully of Receiver, and shall execute a good and sufficient bond in the amount of $11,000 (Eleven Thousand and No/100 Dollars), conditioned on faithful discharge of his duties as Receiver herein and obedience to the Arbitrator.

For his services as Receiver, Marcus P. Rogers shall receive compensation at the hourly rate of $250.00, plus all expenses, including but not limited to professional fees necessary to assist him

EXHIBIT A

VOL. 83 PAGE 516

in his duties. Claimant, Leonard K. Hoskins, shall pay said fees and expenses of the Receiver which shall be without prejudice to Claimant's right to seek recovery of these payments at the final hearing of the case in arbitration.

IT IS FURTHER ORDERED that the appointment of MARCUS P. ROGERS, as Receiver shall continue until further order of the Arbitrator.

EFFECTIVE DATE: April 16, 2013.

THOMAS J. SMITH, Arbitrator

APPROVED AS TO FORM:

COATS ROSE YALE RYMAN & LEE, P.C.
1020 N.E. Loop 410, Suite 800
San Antonio, Texas 78209
(210) 224-7098
(210) 212-5698 (fax)

DAVID YLITALO
State Bar No. 22155500
ATTORNEY FOR LEONARD K. HOSKINS

LANGLEY & BANACK, INC.
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
(210) 736-6600
(210) 735-6889 (fax)

Emerson Banack, Jr.
State Bar No. 01667000
ATTORNEY FOR HAZEL HOSKINS

2

VOL 83 PAGE 547

LAW OFFICES OF

# MARCUS P. ROGERS, P.C.
2135 EAST HILDEBRAND AVE.
SAN ANTONIO, TEXAS 78209
TELEPHONE (210) 736-2222
FAX (210) 881-0200

MARCUS P. ROGERS
(210) 884-1080 CELL
MRogers@marcusrogerslaw.com
MPR2222@aol.com

LYNNELLE L. MOORE
(210) 326-5842 CELL
LMoore@marcusrogerslaw.com

*Via Fax*      210-735-6889

*Certified Mail Return Receipt Requested.* 7012 3460 0000 1700 2430

June 28, 2013

Mr. Emerson Banack, Jr.
Langley & Banack, Inc.
745 E. Mulberry, Suite 900
San Antonio, TX 78212

Re: Arbitration Before Thomas J. Smith

Dear Mr. Banack:

As you are aware Mr. Smith has appointed me Receiver of the Trusts created under the Will of Lee Roy Hoskins, Sr. and given me the responsibility to take possession of all Trust Property.

In a letter dated December 14, 2012, to Mr. Thomas J. Smith and Mr. David Ylitalo, (copy attached) reference is made to "Estate of L.R. Hoskins, Deceased's bank account records for 2004-present." The letter also mentioned that there were overriding royalties being paid by KEBO and Dorado.

In your capacity as counsel to Hazel Hoskins as Trustee of the Trusts and Independent Executor of the Estate demand is made to turn over all property of the Trusts and the Estate to me as Receiver. If property is titled in the name of the Estate or the Trusts, make arrangements to have the property retitled as follows:

Marcus P. Rogers, Receiver, Testamentory
Trusts under Will of Lee Roy Hoskins Sr., Deceased.

Please contact my legal counsel, Glen A. Yale, Yale Law Firm, P.C., 2135 Hildebrand Ave., San Antonio, TX 78209, phone 210.736.2222, fax (210) 881-0610, if you have any questions regarding this request.

Sincerely yours,

Marcus P. Rogers
CC:      Mr. Thomas J. Smith
         Glen A. Yale

EXHIBIT B

VOL. 83 PAGE 518



# LANGLEY & BANACK
### INCORPORATED
Attorneys and Counselors at Law

Emerson Banack, Jr.
E-Mail: ebanack@langleybanack.com

July 26, 2012

Mr. Thomas J. Smith                                         <u>VIA E-MAIL</u>
Law Offices of Thomas J. Smith
112 E. Pecan Street, Suite 3050
San Antonio, Texas 78205-1512

Re:    In Re: Leonard K. Hoskins v. Hoskins, Inc., Hazel Q. Hoskins and Colonel
        Clifton Hoskins; Arbitration Before Thomas J. Smith - Response to David
        Ylitalo's Letter of July 16, 2012

Dear Mr. Smith:

This will be a brief, I promise, response to Mr. Ylitalo's letter to you dated July 16, 2012. First, I find absolutely no game changing documents referred to by Mr. Ylitalo. It is my understanding that Mr. Kinder will respond to references to Hoskins, Inc. as well as Mr. Cliff Hoskins. This response will be on behalf of Mrs. Hazel Hoskins in any and all capacities which she has been brought into by this proceeding.

Mr. Ylitalo makes reference to certain documents which he claims were concealed from him in document requests 7, 21, 22, and 23. Document requests 7 and 21 refer to Hoskins, Inc. documents. Document requests 22 and 23 refer to all documents referencing the Marital Deduction Trust and the Residuary Trust. Mrs. Hoskins has no documents responsive to either request. In response to these requests, I would refer the arbitrator to "Respondent Hazel Hoskins' Reply" which was filed on October 7, 2011 in this arbitration. That Reply consists of six pages, including the Certificate of Service page, a copy of which is attached.

In our discussion on July 13, 2012 I agreed with your suggestion that mediation may be a possible manner of resolving this unseemly arbitration. However, I must point out to you that Mrs. Hoskins was 90 years old on July 16, 2012. I understand that there was a birthday party which some of her friends attended; however, her son Leonard did not. I am reluctant to request Mrs. Hoskins to come to San Antonio to participate in a mediation. She is, as I just stated, 90 years old. She also uses a walker to move about her home and other places. I am not a doctor, do not want to be a doctor, but I am concerned about the effect on her health, both physically and mentally, in participating in a mediation in San Antonio. If she is to participate in any manner in a mediation, I would think that it would have to be by telephone at selected intervals.

TRINITY PLAZA II • 745 EAST MULBERRY, STE 900
SAN ANTONIO, TEXAS 78212-3166 • T 210.736.6600 • F 210.735.6889
WWW.LANGLEYBANACK.COM
SAN ANTONIO • CARRIZO SPRINGS • EAGLE PASS

MERITAS LAW FIRMS WORLDWIDE

EXHIBIT C

VOL. 83 PAGE 519

Mr. Thomas J. Smith
July 26, 2012
Page 2


Please advise if you feel additional information from our office on behalf of Mrs. Hoskins would be beneficial to you at this stage of the proceeding.


Yours truly,

Emerson Banack, Jr.

EB/mbh
Attachment
W:\bclient\13672\0002\L0622363.WPD

cc:   Mr. C. David Kinder                          VIA E-MAIL
      Mr. Matthew G. Cole                          VIA E-MAIL
      Mr. David L. Ylitalo                         VIA E-MAIL
      Mrs. Hazel Hoskins c/o Carolyn Burell
      Ms. Cristina E. Nelson (Firm)                VIA E-MAIL



# LANGLEY & BANACK

**INCORPORATED**

Attorneys and Counselors at Law

Emerson Banack, Jr.
E-Mail: ebanack@langleybanack.com

August 28, 2012

Mr. Thomas J. Smith
Law Offices of Thomas J. Smith                                   <u>VIA E-MAIL</u>
112 E. Pecan Street, Suite 3050
San Antonio, Texas 78205-1512

Re:     Case No. 01-23337-C-11; In Re: Southwest Ranching, Inc.
        In Re: Leonard K. Hoskins v. Hoskins, Inc., Hazel Q. Hoskins and Colonel
        Clifton Hoskins; Arbitration Before Thomas J. Smith

Dear Mr. Smith:

I am disappointed and, to a certain extent, irritated that we were unable to make any movement toward resolving this dispute in the mediation. Mr. Brin is an excellent mediator and did an excellent job in our mediation. However, as you well know, a mediator cannot make any type of offer in any form or fashion. I believe that any further attempts to mediate would be a waste of time and expense. All transactions which Mr. Leonard Hoskins, through his attorney Mr. Ylitalo, complain of are transactions involving Hoskins, Inc. and the Tilden Ranch. The transactions referred to by Mr. Ylitalo in his letter all pertain to and involve Hoskins, Inc. and not Mrs. Hoskins. Mrs. Hoskins has no documents that I am aware of that pertain to any trust or estate matters other than the estate tax returns for 2008 and 2009 which have been furnished to Mr. Ylitalo's client.

It is obvious to me and I believe everyone in the arbitration and mediation that Mr. Ylitalo and his client simply cannot come to grips with the fact that Hoskins, Inc. is no longer on the table in this arbitration.

I recognize that Mr. Ylitalo is requesting an accounting and appointment of a receiver and to remove Mrs. Hoskins from her position with reference to the estate. However, I think such actions would merely result in additional fees and expenses and continue to draw this matter on until each and all of us are dead, buried and have been for ten years. I suggest to Mr. Ylitalo and his client that Mrs. Hoskins is not the only 90 year old person who does not have records and copies of deeds and transactions that occurred during the previous ten years. This continued paranoia pertaining to the assets of this estate are merely going to increase attorneys' fees and add absolutely zero benefit to the estate, trusts, or their beneficiaries, including Mr. Leonard Hoskins.

TRINITY PLAZA II • 745 EAST MULBERRY, STE 900
SAN ANTONIO, TEXAS 78212-3166 • T 210.736.6600 • F 210.736.6889
WWW.LANGLEYBANACK.COM
SAN ANTONIO • CARRIZO SPRINGS • EAGLE PASS
MERITAS® LAW FIRMS WORLDWIDE

EXHIBIT D

VOL 83 PAGE 521

Mr. Thomas J. Smith
August 28, 2012
Page 2

I will be more than happy to participate in a telephone conference or any other type of meeting to discuss this matter that you feel will be helpful.

Yours truly,

Emerson Banack, Jr.

EB/mbh
W:\bclient\13672\0002\L0631960.WPD

cc:  Mr. C. David Kinder                              VIA E-MAIL
     Mr. Matthew G. Cole                              VIA E-MAIL
     Mr. David L. Ylitalo                             VIA E-MAIL
     Mrs. Hazel Hoskins c/o Carolyn Burell
     Ms. Cristina E. Nelson (Firm)                    VIA E-MAIL

33

ARBITRATION

IN RE:                                          §
                                                §
LEONARD K. HOSKINS                              §
                                                §
        Claimant                                §
                                                §
                                                §
vs.                                             §        BEFORE THOMAS J. SMITH
                                                §
HOSKINS, INC., HAZEL Q. HOSKINS,                §
AND COLONEL CLIFTON HOSKINS                     §
                                                §
        Respondents                             §

## AFFIDAVIT OF CAROLYN BURRELL

STATE OF TEXAS          §

COUNTY OF LIVE OAK      §

BEFORE ME, the undersigned authority, personally appeared Carolyn Burrell, known to me to be a person whose name is subscribed to this Affidavit and upon her oath, deposes and states as follows:

1.    "My name is Carolyn Burrell. I am over 21 years of age and am fully able and competent to testify herein. I am able to swear and I do hereby swear that all of the facts contained herein are true, correct, and based on my personal knowledge.

2.    "I began working for Mrs. Hazel Hoskins on October 4, 2004 as both a companion and as a care giver. I have worked continuously for Mrs. Hoskins since that period of time. My general hours with Mrs. Hoskins are from 9:00 a.m. to 4:00 p.m., five to six days a week. Mrs. Hoskins and I have taken trips together at various times from 2004 up until 2010. During this entire period I have been a care giver, companion, and friend to Mrs. Hoskins.

L & B 13672/0002/L0566309.WPD/5

EXHIBIT E

VOL. 83 PAGE 523

3.      "Based on my observations, I am of the opinion that in 2004, Mrs. Hoskins was aware of her surroundings as well as any business dealings that involved her. At that time, Mrs. Hoskins was able to drive, was able to take care of herself, and handled her day-to-day business affairs. It is my opinion that in 2004, Mrs. Hoskins was well aware of what she was doing whenever she made any financial business decisions and signed any business documents, checks, or other documents of importance.

4.      "It is also my opinion that over the last year or so, Mrs. Hoskins' memory has declined. Based upon my observations and knowledge of Mrs. Hoskins, it is my opinion that she does not have a clear and reliable recollection of events that took place in 2004."

FURTHER, this Affiant sayeth not.


CAROLYN BURRELL

SWORN TO AND SUBSCRIBED before me by the said Carolyn Burrell on the 2nd day of December, 2011.

KATHRYN STRAUSE
MY COMMISSION EXPIRES
June 9, 2014

Notary Public, State of Texas

VOL 83 PAGE 524

| | | |
|---|---|---|
| HOSKINS, INC.<br>Plaintiff | §<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§ | 36TH JUDICIAL DISTRICT |
| SOUTHWEST RANCHING, INC.<br>LEE ROY HOSKINS, JR. AND<br>LEONARD KENTON HOSKINS<br>Defendants | §<br>§<br>§<br>§<br>§ | LIVE OAK COUNTY, TEXAS |

## AFFIDAVIT OF HAZEL HOSKINS

| | |
|---|---|
| STATE OF TEXAS | § |
| COUNTY OF NUECES | § |

BEFORE ME, the undersigned authority, on this day personally appeared HAZEL HOSKINS, who, being known to me, upon her oath deposed and stated as follows:

"My name is Hazel Hoskins, I am over the age of eighteen, and I am fully competent to make this affidavit. I know of no reason why I would be disqualified from testifying as follows. I have personal knowledge of the facts stated herein.

I was married to Lee Roy Hoskins, Sr., who died on April 2, 1985. I am the mother of Lee Roy Hoskins, Jr., Colonel Clifton ("Cliff") Hoskins and Leonard Kenton Hoskins.

A special meeting of the shareholders of Hoskins, Inc. was held at the Law Offices of Michael Schmidt in his Corpus Christi law office on May 24, 2001. Mr. Schmidt is my attorney and an attorney for Hoskins, Inc. This meeting was immediately followed by a special meeting of the Directors of Hoskins, Inc. I was present during both meetings, and I have personal knowledge of all matters discussed and decided at the meetings. True and correct copies of the minutes of the two meetings, which contain my signature, are attached to this affidavit, marked collectively as Exhibit "A.

*Affidavit of Hazel Hoskins*
*Hoskins, Inc. vs. Southwest Ranching, Inc., et. al.*
*Page 5 of 5*

EXHIBIT F

CCH000729

## MY HUSBAND'S LAST WILL AND TESTAMENT

My husband, Lee Roy Hoskins, Sr., died on April 2, 1985. Mr. Hoskins was survived by me, and our three sons. At my husband's death 37,500 shares of common stock and 6,269 shares of preferred stock of Hoskins, Inc. were owned by me as my one-half community property, and 37,500 shares of common stock and 6,269 shares of preferred stock of Hoskins, Inc. were owned by my husband as his one-half community property. Under my husband's will, (which was probated under Cause Number 1785, in the County Court of Live Oak County, Texas) his 37,500 shares of common stock, and 6,269 shares of preferred stock, passed to, and vested in, me, as Trustee of the Martial Deduction Trust (the "Trust") created under my husband's will. A copy of my husband's July 20, 1982, "Last Will and Testament" is attached to this affidavit as Exhibit "B". Also attached to this affidavit as Exhibit "C" is a copy of the January 2, 1986, "Inventory, Appraisement and List of Claims" as filed in the County Court of Live Oak County, Texas, under Cause Number 1785, styled Estate of Lee Roy Hoskins, Sr., Deceased.

At the time my husband's will was probated: 1) the Trust, of which I was sole trustee and a beneficiary, owned; 1) 37,500 shares of Hoskins, Inc. common stock, and 6,269 shares of Hoskins, Inc. preferred stock; and 2) I, in my individual capacity, owned 37,500 shares of Hoskins, Inc. common stock, and 6,269 shares of Hoskins, Inc, preferred stock. Since 1980, no one else, including any of my sons, owned any Hoskins, Inc. common or preferred stock.

## THE ERRONEOUS MINUTES

In spite of the above the Hoskins, Inc. corporate minute book contains erroneous "Minutes of the Annual Meeting of Shareholders" dated April 4, 1995, April 5, 1994, April 6, 1993, April 7, 1992, April 2, 1991, April 3, 1990, April 4, 1989, April 5, 1988, April 7, 1987, April 1, 1986, and April 8, 1985. I did not sign these erroneous minutes. These minutes

*Affidavit of Hazel Hoskins*
*Hoskins, Inc. vs. Southwest Ranching, Inc., et. al.*
*Page 5 of 5*

CCH000730

incorrectly reflect that my three sons each own 12,500 shares of common stock, and 2,089.667 shares of preferred stock of Hoskins, Inc. In fact, these shares of common and preferred stock are owned by the Trust, of which I am the sole trustee and a beneficiary.

These erroneous minutes were corrected to reflect that the 37,500 shares of common stock and the 6,269 shares of preferred stock of Hoskins, Inc. - shown in the erroneous minutes to be owned one-third each by my sons - are in fact owned by the Trust. (Again, I am the sole trustee of the Trust with full authority over this stock). Since 1980, my sons have never owned any Hoskins, Inc. common or preferred stock.

### THE JANUARY 1, 1995, ANNUITY AGREEEMNT.

On January 1, 1995, Hoskins, Inc. entered into an annuity agreement which provided for a monthly payment by the Corporation to me in exchange for the transfer by me of my individually owned shares of common and preferred stock of Hoskins, Inc., and my mineral interest in real estate located in Live Oak County, Texas. (A copy of the annuity agreement is attached to this affidavit as part of Exhibit "A"). In fact, in addition to the mineral interests required to be conveyed under this Annuity Agreement, I conveyed to the Corporation other lands and interests in lands, without receiving any consideration for such additional conveyances.

Beginning in October of 2000, Hoskins, Inc. breached the annuity agreement by failing to pay me the full $4,000.00 monthly installment. The Corporation's failure to pay the monthly annuity payment has continued since October 2000. My attorney, Mr. Schmidt, demanded that Hoskins, Inc. cure its default of the annuity agreement; however, it appeared highly unlikely that Hoskins, Inc. would be able to cure the default, or make the payments required by the agreement.

Accordingly, Hoskins, Inc. and I agreed to mutually terminate the annuity agreement in exchange for: 1) the transfer back by the Corporation to me, individually, of 37,500 shares of common stock and 6,269 shares of preferred stock of Hoskins, Inc., (to be paid out of the stock

*Affidavit of Hazel Hoskins*
*Hoskins, Inc. vs. Southwest Ranching, Inc., et al.*
*Page 5 of 5*

CCH000731

38

VOL 83 PAGE 527

on hand in the treasury of the Corporation); and 2) the conveyance by the Corporation, in equal shares, to me, individually and to the Trust, all of the real estate, including mineral interests, previously conveyed to the Corporation . We also agreed that the Corporation be allowed to retain all revenues (estimated to be in excess of $402,000.00) it had received that were attributable to the real estate, including the mineral interests, and that I be allowed to retain all funds received by me pursuant to the annuity agreement, free and clear of all claims of the other.

As a result of the settlement of the Corporation's breach of the annuity agreement I own the 37,500 shares of Hoskins, Inc. common stock, and 6,269 shares of Hoskins, Inc, preferred stock I purportedly transferred to Hoskins, Inc. pursuant to the annuity agreement. (The Trust has continuously owned 37,500 shares of common and 6,269 shares of preferred Hoskins, Inc. stock since my husband's will was probated in 1985).

## IDENTITY OF DIRECTORS

There was an error in the corporate minutes concerning the identity of the proper directors of Hoskins, Inc. This error needed to be corrected. Accordingly, the erroneous minutes of the annual meeting of the shareholders, as previously identified, were corrected to reflect that my sons are not now, and have not been, directors of Hoskins, Inc. The minutes were corrected to reflect that that I am, and have been since the death of my husband, the only director of Hoskins, Inc.

## ELECTION OF DIRECTORS AND OFFICERS

At the May 24, 2001, shareholder's meeting I, acting as the sole shareholder of Hoskins, Inc., nominated and unanimously expanded the board by electing my son, Cliff Hoskins, and me as directors of Hoskins, Inc.

CCH000732

VOL 83 PAGE 528

At the subsequent director's meeting, the directors nominated and elected Cliff Hoskins and me as officers. Cliff Hoskins was elected as President/Treasurer, and I was elected as Vice-President/Secretary, of Hoskins, Inc.

I am one of the custodians of the corporate records of the corporation, including the minutes of Hoskins, Inc. The minutes attached to my affidavit as Exhibit "A" are prepared, kept and maintained by Hoskins, Inc. in the regular course of its business. It was the regular course of business of Hoskins, Inc. for an officer or representative of Hoskins, Inc. with knowledge of the act, event, transaction or decision to make the record or to transmit information regarding the act, event, transaction or decision to be included in the records of Hoskins, Inc. The minutes attached to this affidavit as Exhibit "A" were made at or near the time of the meetings reflected therein, or reasonably soon thereafter. In fact, my attorney prepared the minutes attached as Exhibit "A", and submitted them to Cliff Hoskins and me for review, approval and signature. The minutes attached to this affidavit as Exhibit "A" are exact duplicates of the original minutes. I hereby verify that I signed these minutes.

"Further Affiant sayeth naught."

*Hazel Hoskins*
HAZEL HOSKINS

SUBSCRIBED AND SWORN TO by the said HAZEL HOSKINS, on this the 1ST day of _____June_____, 2001, to certify which witness my official hand and seal of office.

NOTARY PUBLIC, STATE OF TEXAS

Magalie Abrego Gongora
MY COMMISSION EXPIRES
July 23, 2001

VOL 83 PAGE 529

CCH000733



# LANGLEY & BANACK

INCORPORATED

Attorneys and Counselors at Law

Emerson Banack, Jr.
E-Mail: ebanack@langleybanack.com

August 10, 2012

Mr. David L. Ylitalo                                                  VIA E-MAIL
Coats | Rose, P.C.
Chase Center Oak Park
1020 Northeast Loop 410, Suite 800
San Antonio, Texas 78209

     Re:    Case No. 01-23337-C-11; In Re: Southwest Ranching, Inc.
              In Re: Leonard K. Hoskins v. Hoskins, Inc., Hazel Q. Hoskins and Colonel
              Clifton Hoskins; Arbitration Before Thomas J. Smith - Correspondence
              Dated 8/8/12 Regarding Document Copies

Dear Mr. Ylitalo:

     Again, I am confused, unfortunately a recurring event. You appear to be complaining of a 2009 mineral deed whereby Mrs. Hoskins transferred all mineral rights in a 12.28 acre tract to Cliff. You also complain of a transfer of the mineral rights in a 480.17 acre tract to Mrs. Hoskins' revocable trust. Part of my confusion is that you appear to be requesting that I furnish you with copies of the two deeds that you already have in your possession. It is my understanding that Mr. Len Hoskins is a landman in the same area as these two deeds and has been for a number of years. If Len or you know of any other conveyances signed by Mrs. Hoskins in any capacity, please let me know. I know of no other conveyances.

                       Yours truly,

                       Emerson Banack, Jr.

EB/mbh
W:\lbclient\13672\0002\L0628780.WPD

cc:   Mr. Thomas J. Smith                                             VIA E-MAIL
      Mr. C. David Kinder                                             VIA E-MAIL
      Mr. Matthew G. Cole                                             VIA E-MAIL
      Mrs. Hazel Hoskins c/o Carolyn Burell
      Ms. Cristina E. Nelson (Firm)                                   VIA E-MAIL

VOL 83 page 530

TRINITY PLAZA II • 745 EAST MULBERRY, STE 900
SAN ANTONIO, TEXAS 78212-3166 • T 210.736.6600 • F 210.735.6889
WWW.LANGLEYBANACK.COM

SAN ANTONIO • CARRIZO SPRINGS • EAGLE PASS

̅̅T̅̅I̅̅T̅ MERITAS° LAW FIRMS WORLDWIDE

EXHIBIT G

41

* * * Communication Result Report ( Jun. 28. 2013 4:50PM ) * * *

Date/Time: Jun. 28. 2013 4:26PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 3446 Memory TX | 92125698 | P. 31 | OK | |
| | 97356889 | | OK | |
| | 92268395 | | OK | |
| | 92278645 | | OK | |

Reason for error
E. 1) Hang up or line fail  E. 2) Busy
E. 3) No answer  E. 4) No facsimile connection
E. 5) Exceeded max. E-mail size

**LAW OFFICES OF MARCUS P. ROGERS, P.C.**
2135 East Hildebrand Avenue
San Antonio, Texas 78209
PHONE: (210) 736-2222
FAX: (210) 881-0200

*FAX COVER SHEET*

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT. YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.

DATE:    June 28, 2013

TO:    David Ylitalo    FAX NO: (210) 212-5698
       Emerson Banack, Jr.    (210) 735-6889
       David Kinder    (210) 226-8395
       Thomas Smith    (210) 227-8645

FROM:    Marcus P. Rogers    FAX NO: (210) 881-0200

RE:    Re:  In Re: Southwest Ranching, Inc. Debtor
       Lee Roy Hoskins vs. Cliff Hoskins and Hazen Hoskins
       Case # 01-23337-C-11; Adversary #01-2120
       In Arbitration before Thomas J. Smith

ORIGINAL:  WILL NOT FOLLOW: X
           WILL FOLLOW BY MAIL: REGULAR:____ CERTIFIED:_____

TOTAL PAGES: 31 (including cover sheet)

Report of Receiver _____

VOL 83 PAGE 531

NO. 1785

| | | |
|---|---|---|
| ESTATE OF | § | IN THE COUNTY COURT |
| | § | |
| LEE ROY HOSKINS, SR. | § | OF |
| | § | |
| DECEASED | § | LIVE OAK COUNTY, TEXAS |

### ORDER ON RECEIVER'S FIRST AMENDED PETITION

On the 2nd day of July, 2014, the Court heard the First Amended Petition filed by Marcus Rogers, as Receiver of the Marital Deduction Trust and The Residuary Trust under the Last Will and Testament of Lee Roy Hoskins, Sr., Deceased (the "Will"). Having heard the evidence and the arguments of counsel, the Court finds that the following Orders should be entered.

IT IS THEREFORE ORDERED that Hazel Q. Hoskins, former Independent Executor of the Estate of Lee Roy Hoskins, Sr. and former Trustee of the Marital Deduction Trust and Residuary Trust created under the Will, shall file complete and accurate accountings of the Estate from April 2, 1985, until the date of the accounting, pursuant to Texas Estates Code §404.001 and of each Trust from April 2, 1985, until the date of the accounting, pursuant to Texas Property Code §113.152.

IT IS FURTHER ORDERED that the accounting for the Estate shall be filed with the Court, with copies to all parties, and that the accountings for the Trusts shall be delivered to Marcus Rogers, Receiver, with copies of the trust accountings delivered to the Personal Representative of the Estate, the Successor Trustee of the Marital Deduction Trust and the Successor Trustee of the Residuary Trust, if any are serving on the date that the accountings are delivered, and all other parties. A copy of the trust accountings shall also be filed with the Court.

IT IS FURTHER ORDERED that all three accountings shall be filed and copies delivered on or before September 15, 2014.

FILED _August 5_ A.D. 201_4_
LIVE OAK COUNTY, TEXAS
KAREN IRVING, CLERK, COUNTY COURT
BY_____DEPUTY
AT _11:00_ O'CLOCK _am_

Order – Receiver's First Amended Petition – Page 1

VOL. 88 PAGE 521

310

**IT IS FURTHER ORDERED** that all other requested relief is DENIED.

SIGNED this 1st day of August , 2014.

_____
Judge Presiding

VOL. 68 PAGE 522

311